JAMES K. REYNOLDS, PLAINTIFF v. ROYCE REYNOLDS AND JAMES B. RIVENBARK, DEFENDANTS

No. 9314SC514

(Filed 19 April 1994)

**Duress, Coercion, and Undue Influence § 11 (NCI4th)— stock purchase agreement for automobile company—no economic duress—agreement not rescinded**

> Plaintiff was not entitled to rescind a stock purchase agreement on the ground of economic duress and to recover the amount he paid in excess of the price at which defendant had originally contracted to sell the stock to plaintiff since a breach or threatened breach of the original agreement by defendant was insufficient, without more, to establish a claim for duress; plaintiff was an experienced businessman with 25 years involvement in automobile dealerships, the subject of the stock purchase agreement; plaintiff chose to buy the stock in order to make a profitable business deal for himself; and by paying the higher price for the stock, plaintiff received defendant's resignation from the board of directors of the com-

REYNOLDS v. REYNOLDS

[114 N.C. App. 393 (1994)]

pany and the right to receive all of the proceeds from the sale of one dealership.

**Am Jur 2d, Duress and Undue Influence §§ 19, 20.**

Appeal by plaintiff from judgment entered 4 February 1993 by Judge George R. Greene in Durham County Superior Court. Heard in the Court of Appeals 28 February 1994.

Plaintiff brought this action seeking to recover an alleged $182,000 overpayment paid to defendant Reynolds under the terms of a Stock Purchase Agreement. For the most part, the facts are undisputed. In 1977, plaintiff and defendant Reynolds created a corporation known as Star Automobile Company (hereinafter Star). Star's assets included several automobile franchises, including Buick, Volkswagen, Audi, Porsche, and Jaguar. Initially, ownership in the company was equally divided between plaintiff and defendant Reynolds.

In 1983, plaintiff and defendant Reynolds executed a series of documents which controlled both the management and ownership of Star. The primary agreement was the General Agreement, which was executed on 1 November 1983. This agreement amended the existing by-laws of the corporation to require 100% attendance to meet a quorum for shareholder and director meetings. The agreement provided that actions taken by shareholders and directors must be unanimous to be effective. Finally, the agreement contained a provision in which plaintiff agreed that defendant Reynolds would be elected to the Board of Directors of Star for a period of not less than fifteen years, with defendant Reynolds holding such position regardless of his stock ownership in Star.

Plaintiff and defendant Reynolds also entered into a Management Agreement. This agreement provided that Southwestern Automotive Management Company (hereinafter Southwestern), a separate company owned and controlled by defendant Reynolds, would provide certain management services to Star in return for a payment of 15% of the net profits of Star. The parties also entered into a Stock Purchase Agreement which provided for the gradual purchase of defendant Reynolds' stock in Star by plaintiff.

On 1 December 1987, plaintiff and defendant Reynolds, along with their respective spouses, entered into a Buy-Sell Agreement. This agreement contained provisions concerning the transfer and

ownership of plaintiff's and defendant Reynolds' shares of stock in Star. At the time this agreement was executed, plaintiff was the owner of 324,960 shares of Star's common stock, having purchased 121,860 shares from defendant Reynolds. Defendant Reynolds retained ownership of 81,240 shares of Star's common stock.

The terms of the Buy-Sell Agreement granted to plaintiff the option, at any time, to purchase all of the Star stock then owned by defendant Reynolds. The agreement granted to defendant Reynolds the option to sell to plaintiff, at any time, all of the Star stock then owned by him. The agreement further provided that the price for any such sale of Star stock would be determined by reference to the book value of the stock. The book value was to be determined by Star's accountants through a formula set forth in the agreement.

In late 1988, Star suffered net operating losses for a number of months. Plaintiff, President of Star, felt that the losses would continue to build, and decided that it would be in the best interests of Star to sell the corporation. In December of 1988, plaintiff and defendant Reynolds began negotiating about either the purchase by defendant Reynolds of the assets of the corporation, or the sale to a third party of those assets. The parties did not reach an agreement.

In March of 1989, plaintiff approached defendant Reynolds about the possibility of selling the assets of Star to a third party known as the Boyd and Land Group (hereinafter Boyd and Land). Plaintiff contacted defendant Rivenbark, as attorney for both Star and plaintiff and defendant Reynolds individually, to prepare the documents which would grant plaintiff the appropriate authority from defendant Reynolds to negotiate and execute a contract for the sale of Star's assets to Boyd and Land.

On 28 March 1989, plaintiff executed an assignment to defendant Reynolds of plaintiff's interest in a Virginia partnership, known as RER Properties, to defendant Reynolds in return for defendant Reynolds' agreement to terminate the Management Agreement of 1 November 1983.

On 31 March 1989, an asset purchase agreement between Star and Boyd and Land was executed. Plaintiff, as President of Star, and defendant Rivenbark, as Secretary of Star, signed the agreement. The agreement covered the Buick, Audi, Volkswagen, Saab

and Porsche dealerships, but did not provide for the sale of the Jaguar franchise which was owned by Star. The agreement also provided for the sale of all automobile inventory and parts, as well as for the goodwill of Star. By separate agreement, plaintiff, who individually owned the real estate upon which Star was located, agreed to sell the real estate to Boyd and Land. The closing date for this agreement was 1 June 1989.

On or about 22 May 1989, plaintiff sent defendant Reynolds written notice that plaintiff was exercising his option to purchase all of defendant Reynolds' stock in Star under the December 1987 Buy-Sell Agreement. The purchase price would be the book value of defendant Reynolds' shares. The book value of Star had fallen drastically from December of 1988 to May of 1989. The book value of defendant Reynolds' 20% interest had fallen from over $200,000 to $85,000.

Defendant Reynolds informed plaintiff of his displeasure at plaintiff's efforts to immediately acquire his 20% stock interest in Star, since defendant Reynolds would be effectively cut out of any proceeds from the eventual sale of the Jaguar dealership if plaintiff were to immediately purchase his stock. Defendant Reynolds also informed plaintiff that if plaintiff continued in that course of action, defendant Reynolds would not sign the consent forms which would be necessary to close the sale of the assets to Boyd and Land.

Plaintiff and defendant Reynolds met to discuss the situation. Defendant Reynolds demanded the sum of $267,000 from plaintiff for the sale of his stock to plaintiff and for his written consent to the sale to Boyd and Land. Plaintiff contacted another attorney, experienced in the management and trading of automobile dealerships, who advised him that he "had better take what [he] could get."

On 31 May 1989, plaintiff and defendant Reynolds met at defendant Rivenbark's office. They executed an agreement, which was signed by plaintiff in both his individual capacity and as President of Star. Defendant Rivenbark signed the agreement as Secretary of Star. Defendant Reynolds also signed the agreement. The agreement provided that plaintiff would purchase defendant Reynolds' stock in Star for $267,000. In return, defendant Reynolds would agree to give written consent to the transaction to sell Star's assets to Boyd and Land and would resign as director of Star.

REYNOLDS v. REYNOLDS

[114 N.C. App. 393 (1994)]

On 6 June 1989, the Asset Purchase Agreement between Star and Boyd and Land was closed. Defendant Reynolds gave written consent to the sale and was paid the sum of $267,000 for his Star stock. Defendant Reynolds then waived any other rights in and to any remaining assets of Star. Additionally, defendant resigned as director of Star.

On 20 June 1989, plaintiff and defendant entered into a written agreement in which plaintiff exercised his option to sell his stock in Crown Automobile of Richmond, Inc. to defendant, for which defendant paid plaintiff $609,465.

On 18 August 1989, plaintiff entered into an agreement to sell the Jaguar dealership, including the franchise and its assets. On 1 February 1990, the sale of the Jaguar dealership was closed. The assets of Star's Jaguar dealership were paid for as such and $1,000,000 was paid to plaintiff in the form of an $800,000 covenant not to compete and a $200,000 reduction in the price paid by Reynolds for the real estate which was part of an Acura dealership exchanged for the Jaguar franchise.

Plaintiff brought this action seeking to rescind the Stock Purchase Agreement of 31 May 1989 and to recover from defendant Reynolds the difference between the book value of his stock and the price paid by plaintiff for the stock, which is approximately $182,000. Plaintiff also asserted a claim of negligence against defendant Rivenbark for the failure of defendant Rivenbark to have properly obtained the written consent of defendant Reynolds to the Asset Purchase Agreement with Boyd and Land prior to the execution of the Asset Purchase Agreement. Defendant Reynolds asserted a counterclaim against plaintiff, rooted in the various agreements and transactions between himself and plaintiff, seeking damages for plaintiff's breach of their various agreements.

After depositions were taken, defendant Reynolds moved for summary judgment. The trial court granted this motion. Plaintiff now appeals.

*Charles F. Carpenter; and Newsom, Graham, Hedrick, Kennon & Cheek, P.A., by Sherrod Banks; for plaintiff-appellant.*

*Brooks, Pierce, McLendon, Humphrey & Leonard, by Hubert Humphrey and James H. Jeffries, IV, for defendant-appellee Royce Reynolds.*

WELLS, Judge.

Although not addressed by either party to this appeal, we must address its interlocutory nature. As the judgment below did not dispose of all claims as to all parties, and the trial court did not certify it for immediate appeal, its immediate appeal would contravene the provisions of N.C. Gen. Stat. § 1A-1, Rule 54(b) of the Rules of Civil Procedure. Our review of the record reveals that: (1) defendant Reynolds' counterclaim will remain viable only if summary judgment for him was not proper; and (2) the action for negligence against defendant Rivenbark will continue to be viable only if summary judgment for defendant Reynolds is reversed. In the interest of judicial economy, we therefore deem it appropriate to dispose of this appeal on its merits.

Plaintiff contends that the stock purchase agreement of May 1989 should be rescinded because it was entered into under conditions which amounted to economic duress; therefore, the trial court erred in granting defendant's motion for summary judgment. We disagree.

Summary judgment is a device whereby judgment is rendered "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that any party is entitled to a judgment as a matter of law." N.C. Gen. Stat. § 1A-1, Rule 56(c). In ruling on a motion for summary judgment, the court does not resolve issues of fact and must deny the motion if there is any issue of material fact. *Singleton v. Stewart*, 280 N.C. 460, 186 S.E.2d 400 (1972). The burden of establishing that a lack of any triable issue exists rests with the movant. *Pembee Mfg. Corp. v. Cape Fear Constr. Co.*, 313 N.C. 488, 329 S.E.2d 350 (1985).

Plaintiff contends that there are alleged facts which, if proved, would allow a trier of fact to conclude that defendant induced the stock purchase agreement by duress. We now must inquire whether the record before us, taken in the light most favorable to plaintiff, reveals sufficient evidence that plaintiff entered into the stock purchase agreement because of duress.

Duress exists when a person, by an unlawful or wrongful act of another, "is induced to make a contract or perform or forego some act under circumstances which deprive him of the exercise

of free will." *Link v. Link*, 278 N.C. 181, 179 S.E.2d 697 (1971). An act is wrongful "if made with the corrupt intent to coerce a transaction grossly unfair to the victim and not related to the subject of such proceedings." *Id.* Generally, actions taken by a person voluntarily will not be said to be given under duress. *See* 25 Am. Jur. 2d *Duress and Undue Influence* § 3 (1966).

Plaintiff argues that defendant Reynolds was obligated by the Buy-Sell Agreement to sell his stock to plaintiff for book value, and therefore defendant's demand for $287,000 was a threat of breach of contract and constituted economic duress. We are not persuaded by plaintiff's argument, however, since "[m]ere breach or threat of breach of contract without more is insufficient to establish a claim or defense of duress." *George Shinn Sports, Inc. v. Bahakel Sports, Inc.*, 99 N.C. App. 481, 393 S.E.2d 580, *disc. rev. denied*, 328 N.C 571, 403 S.E.2d 511 (1991), *see also Dan B. Dobbs, Dobbs Law of Remedies*, § 10.2(3) (2d ed. 1993). Thus, even if defendant Reynolds were obligated by contract to sell his stock for less than $267,000, this threat alone does not constitute economic duress.

Many other factors lead us to conclude that plaintiff acted freely and voluntarily, and did not enter into the stock purchase agreement because of economic duress. Plaintiff was an experienced businessman who had been involved in automobile dealerships for 25 years. The events and transactions which lead up to the 31 May agreement were many and varied, involving and reflecting the contrasting and at times conflicting views about the operations of Star between these brothers, and the considerable free-will bargaining between them resolved by the 31 May agreement. Plaintiff was not required by any agreement or contract to make the purchase, and was under no obligation to buy the stock; rather, plaintiff chose to buy the stock in order to make a profitable business deal for himself. Moreover, defendant Reynolds was not attempting to force plaintiff to buy his stock at that time; in fact, he objected to plaintiff's efforts to acquire his stock because he would effectively be cut out of the proceeds from the sale. Defendant Reynolds eventually agreed to sell plaintiff his stock, provided that he receive a fair value of his 20% interest in the tangible and intangible assets of the company, as well as consideration for the other valuable non-stock rights defendant held in Star under the previous agreements. By paying defendant Reynolds $267,000, plaintiff in turn received defendant Reynolds' resignation from the board of directors, and he subsequently received all the proceeds from the

sale of Star's assets, including the Jaguar franchise. This bargaining process eliminates any validity to plaintiff's argument that he entered into the agreement only because he was faced with circumstances amounting to duress.

For the reasons stated above, we affirm the order of the trial court.

Affirmed.

Judges ORR and WYNN concur.