An unpublished opinion of the North Carolina Court of Appeals does not constitute controlling legal authority. Citation is disfavored, but may be permitted in accordance with the provisions of Rule 30(e)(3) of the North Carolina Rules of Appellate Procedure.

NO. COA13-718
NORTH CAROLINA COURT OF APPEALS

Filed:  18 March 2014

RABUN COUNTY BANK,
    Plaintiff

    v.                                          Jackson County
                                                No. 12 CVS 344
HIGHLANDS LAND HOLDING
GROUP, LLC, CANDACE L.
DELAPP & JOSEPH K. DELAPP,
    Defendants


Appeal by defendants from judgment entered 19 February 2013 by Judge J. Thomas Davis in Jackson County Superior Court. Heard in the Court of Appeals 20 November 2013.


    *Law Offices of Kenneth W. Fromknecht, II PA, by Kenneth W. Fromknecht, II, for plaintiff-appellee.*

    *David R. Payne, P.A., by David R. Payne, for defendant-appellants.*


    CALABRIA, Judge.


Highlands Land Holding Group, LLC ("Highlands"), Candace L. DeLapp ("Candace") and Joseph K. DeLapp ("Joseph")(collectively "defendants") appeal from the trial court's entry of summary judgment in favor of Rabun County Bank ("plaintiff"). We affirm.

## I. Background

In January 2006, Candace, who was a member-manager of Highlands, and her husband Joseph applied to plaintiff for a $414,000.00 loan to be used by Highlands to acquire real property. On 15 February 2006, Candace and Joseph executed personal guaranties for this loan. Joseph's guaranty indicated that it applied to Highlands' present and future debt to plaintiff. The loan was also secured by a deed of trust in favor of plaintiff.

On 1 March 2007, Candace and fellow Highlands member-manager Anthony Shane Owl-Greason ("Owl-Greason") executed a promissory note on behalf of Highlands in the amount of $587,000.00. Candace and Owl-Greason also executed personal guaranties in connection with this note. As a result of this transaction, the deed of trust securing the original $414,000.00 loan was cancelled.

On 25 September 2007, Candace and Owl-Greason executed a third promissory note on behalf of Highlands, this time in the amount of $155,000.00. They again each executed personal guaranties in connection with this note.

Highlands subsequently failed to make the required payments on both of the 2007 notes. Consequently, on 12 April 2010,

plaintiff initiated an action against defendants in Jackson County Superior Court, seeking payment of $528,703.85 plus interest and fees from all defendants and $110,473.46 plus interest and fees from Highlands and Candace ("the 2010 action"). Owl-Greason was not named as a defendant in the 2010 action because he had declared bankruptcy.

The parties conducted a settlement conference, and on 24 January 2011, they entered into a settlement agreement, whereby defendants would execute a new promissory note to plaintiff in the amount of $663,121.39 in exchange for dismissal of the 2010 action ("the settlement agreement" or "the agreement"). The settlement agreement was executed by Candace in both her personal capacity and as member-manager of Highlands, by Joseph in his individual capacity, and by defendants' attorney. The agreement stated that it was "entered into freely, voluntarily and with the full representation of counsel for all parties[.]"

Pursuant to the settlement agreement, defendants executed the new promissory note on 9 February 2011. In 2012, defendants failed to make the payments required by this new note. On 31 May 2012, plaintiff initiated a new action against defendants, seeking payment of $652,382.47, plus interest and fees. Defendants filed an answer with several affirmative defenses and

counterclaims, including, *inter alia*, plaintiff's alleged violation of the Equal Credit Opportunity Act ("ECOA"), nondisclosure of the creditworthiness of Owl-Greason, duress, and lack of sufficient consideration.

Plaintiff filed a motion for summary judgment as to its claims and defendants' affirmative defenses and counterclaims. On 18 February 2013, the trial court conducted a hearing on plaintiff's motion. The next day, the trial court entered a "Final Judgment" which granted summary judgment in favor of plaintiff on all claims and counterclaims. Defendants appeal.

## II. Standard of Review

"Our standard of review of an appeal from summary judgment is de novo; such judgment is appropriate only when the record shows that 'there is no genuine issue as to any material fact and that any party is entitled to a judgment as a matter of law.'" *In re Will of Jones*, 362 N.C. 569, 573, 669 S.E.2d 572, 576 (2008)(quoting *Forbis v. Neal*, 361 N.C. 519, 524, 649 S.E.2d 382, 385 (2007)). "When considering a motion for summary judgment, the trial judge must view the presented evidence in a light most favorable to the nonmoving party." *Id*. (internal quotations and citation omitted).

## III. Equal Credit Opportunity Act

Defendants argue that the trial court erred by granting summary judgment in favor of plaintiff as to their affirmative defense and counterclaim under the ECOA. We disagree.

Pursuant to the ECOA, "a creditor shall not require the signature of an applicant's spouse or other person, other than a joint applicant, on any credit instrument if the applicant qualifies under the creditor's standards of creditworthiness for the amount and terms of the credit requested." 12 C.F.R. § 202.7(d)(1) (2013). Moreover,

> [i]f, under a creditor's standards of creditworthiness, the personal liability of an additional party is necessary to support the credit requested, a creditor may request a cosigner, guarantor, endorser, or similar party. The applicant's spouse may serve as an additional party, but the creditor shall not require that the spouse be the additional party.

*Id.* § 202.7(d)(5). In the instant case, Joseph averred in his affidavit opposing summary judgment that plaintiff required him to execute a guaranty on 9 April 2007 in order to secure the promissory note executed by Highlands on 1 March 2007. Defendants contend that this guaranty violated the ECOA.

However, even considering Joseph's affidavit in the light most favorable to defendants, there was no evidence presented that the guaranty he executed on 9 April 2007 provided the basis

for his indebtedness to plaintiff. The complaint in the 2010 action sought payment from Joseph specifically on the basis of the guaranty that he executed on 15 February 2006. This guaranty was in conjunction with a loan that both Candace and Joseph applied for in January 2006. In the 15 February 2006 guaranty, Joseph "absolutely and unconditionally guarantee[d] to [plaintiff] the payment and performance of the [$414,000.00 loan] including all renewals, extensions, refinancings and modifications" and further promised to "absolutely and unconditionally guarantee to [plaintiff] the payment and performance of each and every debt, of every type and description, that [Highlands] *may now or at any time in the future owe [plaintiff]* . . . ." (Emphasis added). This language was sufficiently broad to cover the subsequent promissory notes obtained in 2007 by Highlands.

Thus, the uncontroverted evidence below is that plaintiff only sought to collect Highlands' debts from Joseph on the basis of the guaranty he executed on 15 February 2006, and that Joseph was an applicant for the loan for which he executed that guaranty. As a result, the ECOA was not implicated by plaintiff attempting to collect on the 15 February 2006 guaranty. *See 12 C.F.R. § 202.7(d)(1)* ("[A] creditor shall not require the

signature of an applicant's spouse or other person, *other than a joint applicant . . . ."*)(emphasis added)).  This argument is overruled.

## IV.  Nondisclosure

Defendants argue that the trial court erred by granting summary judgment in favor of plaintiff because there was a genuine issue of material fact as to whether plaintiff failed to disclose that Owl-Greason's financial situation was deteriorating.  We disagree.

Our Supreme Court has stated that

> [i]f the creditor knows or has good grounds for believing that the surety is being deceived or misled, or that he was induced to enter into the contract in ignorance of facts materially increasing the risk, of which he has knowledge, and he has an opportunity before accepting his undertaking, to inform him of such facts, good and fair dealing demand that he should make such disclosure to him; and if he accepts the contract without doing so, the surety may afterwards avoid it.

*Construction Co. v. Crain and Denbo, Inc.*, 256 N.C. 110, 120, 123 S.E.2d 590, 598 (1962)(internal quotations and citation omitted).  In the instant case, defendants contend that there was a genuine issue of material fact regarding whether plaintiff "withheld or otherwise failed to speak with respect to Mr. Owl-Greason's diminishing economic viability, wherefore this factual

omission materially and unfairly increased the risks undertaken by each of the Defendants in obligating themselves under the notes or guaranties in question."

Even assuming, *arguendo*, that defendants' argument is correct, it does not entitle them to relief in this case. Plaintiff is seeking to recover from defendants based upon a promissory note which was executed on 9 February 2011. Owl-Greason was not a party to this note and so any information regarding his financial condition could not have affected defendants' decision to execute it. Defendants' allegations regarding nondisclosure would only be applicable to the underlying notes executed prior to the 2011 promissory note. Defendants have settled any claims regarding those notes and cannot use possible defenses to those notes as defenses to the new note in the instant case. Since defendants failed to provide any evidence that plaintiff failed to disclose material information prior to their execution of the 2011 note that is the subject of this case, the trial court properly granted summary judgment as to this issue. This argument is overruled.

## V. Duress

Defendants argue that the trial court erred by granting summary judgment in favor of plaintiff because there was a

genuine issue of material fact as to whether defendants executed the settlement agreement under duress.  We disagree.

> Duress exists when a person, by an unlawful or wrongful act of another is induced to make a contract or perform or forego some act under circumstances which deprive him of the exercise of free will.  An act is wrongful if made with the corrupt intent to coerce a transaction grossly unfair to the victim and not related to the subject of such proceedings. Generally, actions taken by a person voluntarily will not be said to be given under duress.

*Reynolds v. Reynolds*, 114 N.C. App. 393, 398-99, 442 S.E.2d 133, 136 (1994)(internal quotations and citations omitted).

In the instant case, Joseph averred that he and Candace attended the settlement meeting for the 2010 action, but that defendants' legal counsel was not present during the meeting. Defendants contend that the absence of legal counsel allowed members of plaintiff's management to coerce defendants into entering into the settlement agreement against their will. However, the record reflects that the written settlement agreement was entered into by both defendants and their counsel, and the agreement specifically states that it was "entered into freely, voluntarily and with the full representation of counsel for all parties[.]"  Since this evidence conclusively establishes that defendants had the advice and approval of their

legal counsel regarding the settlement, Joseph's statement that defendants were not represented by counsel during the settlement meeting does not create a genuine issue of material fact as to whether they were under duress when they actually executed the agreement. This argument is overruled.

## VI. Consideration

Finally, defendants argue that the trial court erred by granting summary judgment in favor of plaintiff because there was a genuine issue of material fact as to whether Joseph's execution of the settlement agreement was supported by consideration. We disagree.

Our Supreme Court has stated that "there is consideration if the promisee, in return for the promise, *does anything legal which he is not bound to do*, or refrains from doing anything which he has a right to do, whether there is any actual loss or detriment to him or actual benefit to the promisor or not." *Penley v. Penley*, 314 N.C. 1, 14, 332 S.E.2d 51, 59 (1985)(internal quotations and citations omitted). In the settlement agreement, plaintiff agreed to dismiss the 2010 action against defendants in exchange for the execution of a new promissory note. This exchange of promises was adequate to establish consideration for the settlement agreement. *See*

*Howell v. Butler*, 59 N.C. App. 72, 75, 295 S.E.2d 772, 774 (1982)(holding that a promissory note was supported by valid consideration because, *inter alia*, "the promissory note was signed to forestall a suit by the defendants against the plaintiffs, and the deed of trust securing the note was part of that negotiated settlement."). Accordingly, there was no genuine issue of material fact as to whether the settlement agreement was supported by consideration. This argument is overruled.

## VII. Conclusion

Joseph's execution of a guaranty on 15 February 2006, which provided the basis for his indebtedness to plaintiff in the 2010 action, did not implicate the ECOA. Defendants have failed to demonstrate any genuine issues of material fact regarding their defenses of nondisclosure, duress, and lack of consideration as to the settlement agreement executed in 2011. Thus, the trial court properly granted summary judgment in favor of plaintiff. The trial court's order is affirmed.

Affirmed.

Judges HUNTER, Robert C. and HUNTER, Jr., Robert N. concur.

Report per Rule 30(e).