Zagaroli v. Neill, 2016 NCBC 105.

STATE OF NORTH CAROLINA

CATAWBA COUNTY

IN THE GENERAL COURT OF JUSTICE
SUPERIOR COURT DIVISION
15 CVS 2635

PETE ZAGAROLI,

        Plaintiff and
        Counterclaim
        Defendant,

    v.

JAMES CLAYTON NEILL;
RICK BERRY; NEILL GRADING
AND CONSTRUCTION COMPANY,
INC.; and RECLAMATION, LLC,

        Defendants and
        Counterclaim/Third-
        Party Plaintiffs,

    v.

BENCHMADE, LLC and DEAN
PRITCHETT,

        Third-Party
        Defendants.

)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)

**ORDER AND OPINION ON PLAINTIFF'S MOTION TO DISMISS AND MOTION FOR JUDGMENT ON THE PLEADINGS**

1.      **THIS MATTER** is before the Court upon Plaintiff Pete Zagaroli's ("Zagaroli") Motion to Dismiss Pursuant to Rules 8, 9, 12(b)(1) and 12(b)(6) of the North Carolina Rules of Civil Procedure ("Rule(s)") (the "Motion to Dismiss") and Zagaroli's Motion for Judgment on the Pleadings Pursuant to Rule 12(c) (the "Motion for Judgment on the Pleadings" and, collectively, the "Motions") filed October 14, 2016 in the above-captioned case. For the reasons set forth below, the Court hereby

**GRANTS IN PART** and **DENIES IN PART** the Motion to Dismiss and **DENIES** the Motion for Judgment on the Pleadings in its entirety.

> *Law Offices of Matthew K. Rogers, by Matthew K. Rogers, for Plaintiff Pete Zagaroli.*

> *Young, Morphis, Bach & Taylor, LLP, by Paul E. Culpepper and Timothy D. Swanson, for Defendants James Clayton Neill, Rick Berry, Neill Grading and Construction Company, Inc. and Reclamation, LLC.*

Robinson, Judge.

## I. INTRODUCTION

2. This lawsuit involves various claims brought by Zagaroli and counterclaims brought by Defendants that arose out of several attempts to renovate historic factories and mills and to build furniture out of reclaimed factory building materials for profit. Because the Court concludes that there are numerous disputed issues of fact, judgment on the pleadings as a matter of law is improper, and the Court therefore denies the Motion for Judgment on the Pleadings. In addition, because the Court concludes that Defendants have failed to plead their claim for fraud with sufficient particularity, the Court grants the Motion to Dismiss with respect to Defendants' fraud claim and dismisses that claim without prejudice, but denies the Motion to Dismiss in all other respects.

## II. PROCEDURAL HISTORY

3. Zagaroli initiated this action by filing his original Complaint on October 26, 2015. Zagaroli filed a First Amended Complaint (the "Amended Complaint") on March 21, 2016.

4.      The case was designated as a mandatory complex business case by order of the Chief Justice of the Supreme Court of North Carolina dated April 14, 2016.  The action was assigned to Chief Business Court Judge Gale on the same day.  The action was reassigned to the undersigned by order dated July 5, 2016.

5.      On May 18, 2016, Defendants James Clayton Neill ("Neill"), Rick Berry ("Berry"), Neill Grading and Construction Company, Inc. ("Neill Grading"), and Reclamation, LLC ("Reclamation") (collectively, "Defendants") filed an Answer, Counterclaim, and Third-Party Complaint against Third-Party Defendants Benchmade, LLC ("Benchmade") and Dean Pritchett ("Pritchett").  Benchmade answered the Third-Party Complaint on August 1, 2016.  Pritchett has not made an appearance in this case, and the Court entered default against him on October 31, 2016.

6.      Zagaroli filed the Motions and a supporting brief on October 14, 2016.  Both Motions have been fully briefed, and the Court held a hearing on the Motions on December 15, 2016.  The Motions are ripe for resolution.

### III.   FACTUAL BACKGROUND

7.      The Court does not make findings of fact on motions for judgment on the pleadings under Rule 12(c) or on motions to dismiss under Rule 12(b)(6), but only recites those facts included in the pleadings that are averred by the non-moving parties—here, Defendants.  *See Ragsdale v. Kennedy*, 286 N.C. 130, 137, 209 S.E.2d 494, 499 (1974).

8. Zagaroli is a resident of Catawba County, North Carolina. (Am. Compl. ¶ 1.) Zagaroli was, at one time, a construction general contractor who built new construction, renovations, and additions.

9. Neill is also a resident of Catawba County. (Am. Compl. ¶ 2.) Neill is the Secretary of Neill Grading, a North Carolina corporation with its principle place of business in Hickory. (Am. Compl. ¶ 4; Ans. ¶ 4.)

10. Berry is also a resident of Catawba County. (Am. Compl. ¶ 3.)

11. Reclamation is a North Carolina limited liability company with its principal place of business in Catawba County. (Am. Compl. ¶ 7.)

12. From 2007 through 2010, Zagaroli researched and evaluated various ways to make money from renovating historic factories and mills in Catawba County. (Am. Compl. ¶ 10.) Zagaroli sought out professionals with experience in renovating mills to obtain tax credits, and began working with James Maynard ("Maynard"), an architect with significant experience with historic mills and tax credits. (Am. Compl. ¶ 11.)

13. On June 8, 2009, Zagaroli contracted to purchase an abandoned hosiery mill property called the Hollar Hosiery Mill (the "Hollar Mill"). (Countercl. ¶ 11.) Zagaroli approached Neill regarding a business opportunity involving the renovation of the Hollar Mill. (Am. Compl. ¶ 15; Ans. ¶ 15.) Zagaroli informed Neill that he had the property under contract, but was financially unable to come up with the purchase price to close, and asked Neill to purchase the property. (Am. Compl. ¶ 16; Ans. ¶ 16; Countercl. ¶ 12.)

14.     In September 2009, Neill, Berry, and two other individuals together formed Hollar Hosiery Investments, LLC ("Hollar Hosiery Investments"). (Ans. ¶ 20.) On September 22, 2009, Zagaroli, for himself and on behalf of Zagaroli Construction Co., Inc. ("Zagaroli Construction"), assigned all rights in the Hollar Mill to Hollar Hosiery Investments. (Am. Compl. ¶ 16; Ans. ¶ 16.) It was agreed that: (1) Hollar Hosiery Investments would purchase the Hollar Mill; (2) Hollar Hosiery Investments would work with Zagaroli to develop a plan of development generally consistent with the concepts and plans presented by Zagaroli; (3) Hollar Hosiery Investments would use Zagaroli to renovate and perform construction on the Hollar Mill; and (4) if a development plan did not occur and/or construction and renovation plans did not proceed within twelve months of closing to the satisfaction of Hollar Hosiery Investments, Zagaroli would purchase the Hollar Mill from Hollar Hosiery Investments within thirty days of written notice from Hollar Hosiery Investments. (Countercl. ¶ 15.)

15.     Together, Neill and Zagaroli used designs and costing prepared by Zagaroli to solicit numerous potential tenants for the Hollar Mill, including Lenoir Rhyne and Dale Jarrett. (Am. Compl. ¶ 33; Ans. ¶ 33.) Hollar Hosiery Investments also requested Zagaroli Construction to perform some limited work at Hollar Mill. (Am. Compl. ¶ 42; Ans. ¶ 42.) However, Zagaroli Construction lost its contractor's licenses as of December 31, 2010, and Zagaroli Construction could not complete any of its obligations regarding the Hollar Mill. (Am. Compl. ¶ 46; Ans. ¶ 46.) Zagaroli suggested supervising another general contractor, but no agreement was ever

reached between Hollar Hosiery Investments and Zagaroli or Zagaroli Construction. (Am. Compl. ¶ 46; Ans. ¶ 46.)

16. Hollar Hosiery Investments then contracted with Red Clay, a construction management company owned by Maynard. (Am. Compl. ¶ 47; Ans. ¶ 47.) Although Defendants deny that Hollar Hosiery Investments or any of the Defendants ever agreed to pay Zagaroli for any of his work on Hollar Mill, Zagaroli entered into an agreement with Maynard for Zagaroli to be compensated by Maynard for Zagaroli's construction management and supervision services on the project. (Am. Compl. ¶¶ 47–48; Ans. ¶¶ 47–48.)

17. Hollar Hosiery Investments made the decision to let Neill Grading use its contractor's license to perform work on the project, rather than using outside contractors, in an attempt to make it financially viable, even though Neill Grading did not have experience in historic mill renovation. (Am. Compl. ¶ 53; Ans. ¶ 53.)

18. In addition to the Hollar Mill project, in October 2010, Zagaroli contacted Neill about an opportunity to reclaim materials from the JP Stevens factory in Lincolnton, North Carolina. (Am. Compl. ¶ 35; Ans. ¶ 35.) Zagaroli, however, did not have the money to pay for his idea of purchasing, removing, and storing the materials from the JP Stevens factory. (Am. Compl. ¶ 36; Ans. ¶ 36.) Therefore, although Zagaroli supervised the project, Neill funded the labor associated with the purchase, removal, and transportation of the materials, at a cost of over $50,000. (Am. Compl. ¶¶ 36–37; Ans. ¶¶ 36–37.) At this time, Zagaroli and Neill had a "gentlemen's agreement" to attempt to create a business opportunity in the reclaimed materials

and possibly other suggestions made by Zagaroli at the time. (Am. Compl. ¶ 38; Ans. ¶ 38.) To this end, furniture samples were made from the reclaimed wood and Zagaroli solicited potential buyers for the furniture. (Am. Compl. ¶ 41; Ans. ¶ 41.)

19. In February 2011, Reclamation was formed for the purpose of identifying additional old mills and salvageable building materials, reclaiming the materials, and building and selling furniture, mill work, and other construction-related items for a profit. (Ans. ¶ 54.) Zagaroli began soliciting companies regarding selling furniture made from reclaimed materials. (Am. Compl. ¶ 54; Ans. ¶ 54.)

20. Zagaroli, however, did not have sufficient funds to start up and operate a furniture manufacturing operation. (Am. Compl. ¶ 55; Ans. ¶ 55.) Zagaroli told Neill and Berry that Zagaroli would need Neill and Berry to fund the Reclamation business. (Am. Compl. ¶ 56; Ans. ¶ 56.)

21. Berry initially invested $26,000 in Reclamation for start-up capital, along with the money Neill had already invested in funding the removal of materials from the JP Stevens factory. (Am. Compl. ¶ 57; Ans. ¶ 57.) Zagaroli told Berry that the $26,000 would be all he would have to pay as his investment in the company. (Ans. ¶ 57.) Ultimately, Neill made capital contributions to Reclamation totaling $52,019.69 and Berry made capital contributions to Reclamation totaling $61,457.93 (the "Capital Contributions").

22. After Reclamation was started, Zagaroli demanded that he be paid $1,000 per week to manage the business. (Am. Compl. ¶ 58; Ans. ¶ 58.) Defendants

specifically admit that Neill and Berry "agreed to the proposal as long as the company had money and was profitable." (Am. Compl. ¶ 58; Ans. ¶ 58.)

23. Neill and Berry agreed that Zagaroli would have a 30% economic membership interest in Reclamation. (Am. Compl. ¶ 59; Ans. ¶ 59.) Zagaroli agreed to be an unnamed partner and to share in 30% of Reclamation's benefits and liabilities. (Am. Compl. ¶ 61; Ans. ¶ 61.) Reclamation's remaining economic membership interests were as follows: Neill 30%, Berry 30%, and Ryan Lovern 10%. (Am. Compl. ¶ 63; Ans. ¶ 63.) Neill and Berry retained all ownership interest in Reclamation. (Countercl. ¶ 25.)

24. Because Neill and Berry did not trust Zagaroli with the ability to sign checks on Reclamation's behalf, Neill, Berry, and Zagaroli stipulated that only Neill and Berry would have signature rights on any of Reclamation's accounts. (Am. Compl. ¶ 67; Ans. ¶ 67.)

25. In March 2011, Zagaroli informed Neill that Reclamation was out of operating capital. Because the parties had agreed that no additional capital infusions would be required of any member of the company, the parties agreed that Reclamation would borrow $50,000 to fund the operation. (Countercl. ¶ 33.) Neill and Berry signed a note for $50,000 to fund Reclamation's operations (the "March 2011 Loan"). (Am. Compl. ¶ 74; Ans. ¶ 74.)

26. In July 2011, Zagaroli again informed Neill that Reclamation was out of money. (Countercl. ¶ 35.) While it was unclear why the operation was losing money so fast, Neill, Berry, and Zagaroli agreed that Reclamation would borrow an

additional $125,000 to fund the operation. (Countercl. ¶ 35.) However, Neill and Berry personally guaranteed a $125,000 loan from Carolina Trust Bank for a line of credit for Reclamation's operations (the "July 2011 Loan"). (Am. Compl. ¶ 81; Ans. ¶ 81.)

27. In 2012, Zagaroli was primarily responsible for the operations of Reclamation. (Am. Compl. ¶ 94; Ans. ¶ 94.) Throughout 2012, Zagaroli continuously promised to reimburse Neill and Berry for the Capital Contributions, and made promises to repay all payments Neill and Berry were making on the March 2011 Loan and the July 2011 Loan. (Am. Compl. ¶ 96; Ans. ¶ 96.)

28. During that same time, Reclamation was having delivery problems, quality issues, and customers were concerned about pricing. (Am. Compl. ¶ 100; Ans. ¶ 100.) Reclamation could not afford to hire employees. (Am. Compl. ¶ 120; Ans. ¶ 120.) Neill and Berry told Zagaroli on numerous occasions in 2012 that they would not invest additional money in Reclamation, and that Reclamation had to fund its operations through its own cash flow. (Am. Compl. ¶ 99; Ans. ¶ 99.)

29. Reclamation never repaid any of the March 2011 Loan or the July 2011 Loan. (Ans. ¶ 130.) In November 2013, Neill and Berry offered to sell their ownership interest in Reclamation, with certain stipulations, to Zagaroli. (Am. Compl. ¶ 133; Ans. ¶ 133.) On November 26, 2013, Neill, Berry, Zagaroli, and Pritchett entered into a Purchase Agreement (the "Reclamation Purchase Agreement"), whereby the parties agreed that:

a.    Zagaroli and Pritchett would buy Reclamation by assuming all obligations under the notes securing the March 2011 Loan and the July 2011 Loan;

b.    Zagaroli and Pritchett would reimburse Neill $52,019.69 and Berry $60,327.84 for the Capital Contributions each made to Reclamation;

c.    upon repayment of the March 2011 Loan, the July 2011 Loan, and the cash advances, 100% of Reclamation's ownership would be transferred to Zagaroli and Pritchett;

d.    upon execution of the agreement, Zagaroli and Pritchett would own and have the right to use the Reclamation name; and

e.    in the event of non-payment of the notes and advances, or other breach of the agreement by Zagaroli and Pritchett, the right, use, benefit, and ownership of the Reclamation name would be transferred back to Neill and Berry.

(Am. Compl. Ex. 4; Countercl. ¶ 42.)

30.    On July 27, 2015, Neill and Berry notified Zagaroli that the Purchase Agreement had been rescinded because Zagaroli and Pritchett had failed to make the required note payments to Carolina Trust Bank as set forth in the Purchase Agreement. Accordingly, Neill and Berry considered Zagaroli and Pritchett's rights of ownership in Reclamation terminated and transferred back to Neill and Berry. (Am. Compl. Ex. 5.)

31.    Defendants allege that, unbeknownst to Neill and Berry, Zagaroli started embezzling money from Reclamation in 2013. (Countercl. ¶ 36.) Neill and Berry discovered that Zagaroli had forged Neill's name on twenty-six checks made payable to "Pete Zagaroli." These checks, which were issued and drawn on Reclamation's

account without Neill or Berry's knowledge or consent, totaled $65,721.15. (Countercl. ¶ 36.)

## IV.    LEGAL STANDARD

### A.    Rule 12(c)

32.    The function of Rule 12(c) is "to dispose of baseless claims or defenses when the formal pleadings reveal their lack of merit." *Ragsdale v. Kennedy*, 286 N.C. 130, 137, 209 S.E.2d 494, 499 (1974).    On a Rule 12(c) motion, "[t]he movant is held to a strict standard and must show that no material issue of facts exists and that he is entitled to judgment." *Id.* Therefore, a motion for judgment on the pleadings "should not be granted unless the movant clearly establishes that no material issue of fact remains to be resolved and that he is entitled to judgment as a matter of law." *Carpenter v. Carpenter*, 189 N.C. App. 755, 761, 659 S.E.2d 762, 767 (2008).

33.    Moreover, the Court must read the pleadings in the light most favorable to the nonmoving party.  "All well pleaded factual allegations in the nonmoving party's pleadings are taken as true and all contravening assertions in the movant's pleadings are taken as false.  All allegations in the nonmovant's pleadings, except conclusions of law, legally impossible facts, and matters not admissible in evidence at the trial, are deemed admitted by the movant for purposes of the motion." *Ragsdale*, 286 N.C. at 137, 209 S.E.2d at 499.  "A motion for judgment on the pleadings is allowable only where the pleading of the opposite party is so fatally deficient in substance as to present no material issue of fact." *George Shinn Sports, Inc. v. Bahakel Sports, Inc.*, 99 N.C. App. 481, 486, 393 S.E.2d 580, 583 (1990).

B.    Rule 12(b)(6)

34.    On a motion to dismiss under Rule 12(b)(6), the Court's inquiry is "whether, as a matter of law, the allegations of the complaint, treated as true, are sufficient to state a claim upon which relief may be granted under some legal theory." *Harris v. NCNB Nat'l Bank*, 85 N.C. App. 669, 670, 355 S.E.2d 838, 840 (1987).

35.    Dismissal of a claim pursuant to Rule 12(b)(6) is proper "(1) when the complaint on its face reveals that no law supports plaintiff's claim; (2) when the complaint reveals on its face the absence of fact sufficient to make a good claim; [or] (3) when some fact disclosed in the complaint necessarily defeats the plaintiff's claim." *Oates v. JAG, Inc.*, 314 N.C. 276, 278, 333 S.E.2d 222, 224 (1985); *see also Jackson v. Bumgardner*, 318 N.C. 172, 175, 347 S.E.2d 743, 745 (1986). Otherwise, "a complaint should not be dismissed for insufficiency unless it appears to a certainty that plaintiff is entitled to no relief under any state of facts which could be proved in support of the claim." *Sutton v. Duke*, 277 N.C. 94, 103, 176 S.E.2d 161, 166 (1970) (emphasis omitted).

36.    The Court is not required "to accept as true allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences." *Good Hope Hosp., Inc. v. N.C. Dep't of Health & Human Servs.*, 174 N.C. App. 266, 274, 620 S.E.2d 873, 880 (2005).

## V.    MOTION FOR JUDGMENT ON THE PLEADINGS

37.    The Motion for Judgment on the Pleadings asserts that Zagaroli is entitled to partial judgment as a matter of law for: (1) "breach of contracts also amounting to

wage and hour act claims"; (2) "breach of fiduciary duties as against Defendant Neill and Neill Grading"; and (3) "self-dealing and misappropriation of opportunity."

38. Despite well-established North Carolina law that allegations in the nonmoving party's pleadings are taken as true and all contravening assertions in the movant's pleadings are taken as false, Zagaroli's recitation of the "Facts Established by the Pleadings" in his brief are replete with assertions of fact that he incorrectly represents are uncontested or admitted by Defendants, when a mere cursory review of Defendants' pleadings shows that many of the allegations which are central to Zagaroli's Motion for Judgment on the Pleadings are expressly denied by Defendants.

39. Zagaroli first argues that he is entitled to a judgment that Reclamation, Neill, and Berry have breached contracts and violated the North Carolina Wage and Hour Act, N.C. Gen. Stat. § 95-25.1 *et seq.* The central contention underlying such claims, however, is expressly denied by Defendants in their answer to the complaint. Zagaroli alleges in his Amended Complaint that "Neil and Berry promised to pay Zagaroli at least $1,000.00 per week for [R]eclamation." (Am. Compl. ¶ 59.) Defendants expressly deny this allegation, and other similar allegations. (*See, e.g.*, Ans. ¶ 59.) The pleadings only admit that Neil and Berry agreed that Zagaroli would be paid $1,000 per week as long as Reclamation was profitable. (*See* Ans. ¶ 58; Countercl. ¶ 30.) Zagaroli's assertion that "[t]here is no dispute that Neill and Berry agreed to pay . . . Zagaroli $1,000 per week" is therefore false.

40. Moreover, there is no allegation by Zagaroli, and certainly no admission by Defendants, that Zagaroli was an "employee," that Reclamation was an "employer,"

or that Zagaroli was entitled to a "wage," as these terms are defined by the Wage and Hour Act. *See* N.C. Gen. Stat. § 95-25.2.

41. Accordingly, the Court cannot conclude that Zagaroli has clearly established that no material issue of fact remains to be resolved and that he is entitled to judgment as a matter of law as to these claims. The Motion for Judgment on the Pleadings as to these claims is therefore denied.

42. Zagaroli also argues that he is entitled to a judgment that Neill and Neill Grading owe Zagaroli fiduciary duties and breached those duties by misappropriating opportunities for the benefit of Neill Grading. "For a breach of fiduciary duty to exist, there must first be a fiduciary relationship between the parties." *Dalton v. Camp*, 353 N.C. 647, 651, 548 S.E.2d 704, 707 (2001). Zagaroli asserts fiduciary duties exist because (1) Zagaroli and Neill were business partners with regard to the historic mill renovation business, and (2) Neill and Berry were controlling members of Reclamation.

43. "Whether a fiduciary relationship exists is determined by the specific facts and circumstances of the case." *Tin Originals, Inc. v. Colonial Tin Works, Inc.*, 98 N.C. App. 663, 665, 391 S.E.2d 831, 832 (1990). Although "business partners . . . are each other's fiduciaries as a matter of law," *Hajmm Co. v. House of Raeford Farms, Inc.*, 328 N.C. 578, 588, 403 S.E.2d 483, 489 (1991), the pleadings show a material issue of fact as to whether Zagaroli and Neill were indeed business partners with regard to the historic mill renovation business. Although Zagaroli alleges, and Defendants admit, that "Zagaroli and Neill had a 'gentlemen's agreement' to attempt

to create a business opportunity in the reclamation of the materials from the JP Stevens factory and possibly other suggestions made by Zagaroli at the time," (Am. Compl. ¶ 38; Ans. ¶ 38), Defendants do not admit or aver facts showing that any sort of business partnership existed between Zagaroli and Neill with regard to the historic mill renovation business. Because there remains an issue of fact on the pleadings regarding the existence of a fiduciary relationship between Zagaroli and Neill with respect to the historic mill renovation business, judgment as a matter of law is improper.

44. Zagaroli also contends that Neill and Berry each owe him a fiduciary duty as the controlling members of Reclamation. However, an issue of fact remains regarding this alleged fiduciary relationship as well. While North Carolina law is clear that a controlling member of an LLC, like a controlling shareholder of a corporation, owes a fiduciary duty to minority members, *Kaplan v. O.K. Techs., L.L.C.*, 196 N.C. App. 469, 473, 675 S.E.2d 133, 137, the pleadings do not establish as a matter of law that either Neill or Berry was a controlling member of Reclamation. In fact, several of Zagaroli's own allegations tend to point to the conclusion that Zagaroli, and neither Neill nor Berry, was a controlling member of Reclamation. For example, Zagaroli alleges that "at no point did Neill or Berry participate in Reclamations [sic] operations." (Am. Compl. ¶ 68.) The Court concludes that, based on the pleadings, at the very least, an issue of fact remains regarding the existence of a fiduciary relationship between Zagaroli and Neill and Berry with respect to Reclamation. *See Corwin v. British Am. Tobacco PLC*, No. COA15-1334, 2016 N.C.

App. LEXIS 1320, at \*20 (N.C. Ct. App. Dec. 20, 2016) (presumption that a minority shareholder is not a "controlling shareholder" may be rebutted if "it is reasonable to infer that a minority shareholder exercised actual control over the corporation's actions").

45.     Finally, although Zagaroli purports to bring a claim for "Self-Dealing and Misappropriation of Corporate Opportunities," he is not entitled to judgment on the pleadings on this claim.  Indeed, "[m]isappropriation of corporate opportunities is logically a derivative claim, but not an individual claim, because the injury is to the corporation, not to an individual shareholder." *Plasman v. Decca Furniture (USA), Inc.*, 2016 NCBC LEXIS 80, at \*38 (N.C. Super. Ct. Mar. 4, 2016) (citing *Meiselman v. Meiselman*, 309 N.C. 279, 307, 307 S.E.2d 551, 567 (1983)).  Zagaroli makes no attempt to bring this claim on behalf of Reclamation, but rather brings the claim in his individual capacity.  Accordingly, the Court denies the Motion for Judgment on the Pleadings on Zagaroli's claim for misappropriation of corporate opportunity.

46.     In sum, various factual disputes exist on the face of the pleadings, and Zagaroli therefore is not entitled to judgment as a matter of law.  Accordingly, the Motion for Judgment on the Pleadings is denied in its entirety.

## VI.     MOTION TO DISMISS

47.     Zagaroli also moves to dismiss Defendants' counterclaims for conversion, fraud, and breach of contract.  Zagaroli first argues that Neill and Berry lack standing to assert claims of conversion or fraud.  The Counterclaim is clear, however, that the claim for conversion is brought derivatively on behalf of Reclamation, and not

individually by Neill and Berry. (*See* Countercl. ¶ 66.) Moreover, counsel for Defendants stipulated at the hearing that both claims are made on behalf of Reclamation, and that neither Neill nor Berry intended to bring such claims individually. Accordingly, the Motion to Dismiss is moot in this regard.

48. Next, Zagaroli argues that Reclamation's claim for fraud lacks sufficient specific factual allegations as required by Rule 9. "The essential elements of fraud are: (1) False representation or concealment of a [past or existing] material fact, (2) reasonably calculated to deceive, (3) made with intent to deceive, (4) which does in fact deceive, (5) resulting in damage to the injured party." *Hardin v. KCS Int'l, Inc.*, 199 N.C. App. 687, 696, 682 S.E.2d 726, 733 (2009) (alteration in original) (internal quotations omitted) (quoting *Phelps-Dickson Builders, L.L.C. v. Amerimann Partners*, 172 N.C. App. 427, 437, 617 S.E.2d 664, 670 (2005)). "Allegations of fraud are subject to more exacting pleading requirements than are generally demanded by our liberal rules of notice pleading." *Chesapeake Microfilm, Inc. v. E. Microfilm Sales & Serv., Inc.*, 91 N.C. App. 539, 542, 372 S.E.2d 901, 903 (1988) (internal quotation marks and citation omitted). Rule 9 provides that "[i]n all averments of fraud, duress or mistake, the circumstances constituting fraud or mistake shall be stated with particularity." N.C. Gen. Stat. § 1A-1, Rule 9(b). "[I]n pleading actual fraud the particularity requirement is met by alleging time, place and content of the fraudulent representation, identity of the person making the representation and what was obtained as a result of the fraudulent acts or representations." *Chesapeake Microfilm, Inc.*, 91 N.C. App. at 543, 372 S.E.2d at 903.

49. Here, Defendants allege that "Neill and Berry discovered that Zagaroli had forged Neill's name on twenty-six (26) checks made payable to 'Pete Zagaroli.' These checks, which were issued and drawn on Reclamation's account without Neill or Berry's knowledge or consent, totaled $65,721.15." Defendants also allege such actions began in 2013. (Countercl. ¶¶ 36, 69.) Defendants further allege that "Zagaroli intended for Reclamation, Neill and Berry to rely upon his acts and representations in perpetrating his scheme of fraud and deceit, and Reclamation, Neill and Berry reasonably relied on Zagaroli's acts and representations." (Countercl. ¶ 70.) Defendants do not allege the specific time, place, or content of Zagaroli's false representations. Accordingly, the Court concludes that Defendants have not pleaded a false representation with the sufficient particularity required by Rule 9(b) to support their fraud claim.

50. Although Defendants purport to base their fraud claim on Zagaroli's affirmative misrepresentations, a claim for fraud may also be based on "a failure to disclose a material fact relating to a transaction which the parties had a duty to disclose." *Hardin*, 199 N.C. App. at 696, 682 S.E.2d at 733.

> A duty to disclose arises where either: (1) the parties to the transaction are in a fiduciary relationship; (2) the parties are not fiduciaries and "a party has taken affirmative steps to conceal material facts from the other"; or (3) the parties are not fiduciaries and "one party has knowledge of a latent defect in the subject matter of the negotiations about which the other party is both ignorant and unable to discover through reasonable diligence."

*Shaw v. Gee*, 2016 NCBC 101, ¶ 24 (N.C. Super. Ct. Dec. 21, 2016) (quoting *Hardin*, 199 N.C. App. at 696, 682 S.E.2d at 733).

51. Here, Defendants do not allege that Zagaroli owed fiduciary duties to Reclamation. Further, Defendants do not allege that Zagaroli had knowledge of a latent defect about which Reclamation was ignorant and unable to discover through reasonable diligence. Thus, the only possible basis for finding Zagaroli had a duty to disclose is that Zagaroli took affirmative steps to conceal material facts from Reclamation. In this regard, Defendants allege that "Zagaroli created and carried out a scheme to defraud Reclamation, Neill and Berry with the intent to deceive by misrepresenting the use of Reclamation's funds and concealing the nature and impact of his use of those funds for his personal benefit to the detriment of Reclamation, Neill and Berry." (Countercl. ¶ 68.) Defendants do not allege any specific affirmative acts that Zagaroli took to conceal the twenty-six forged checks from Reclamation. Therefore, the Court concludes that Defendants have not alleged facts showing that Zagaroli took affirmative steps to conceal the forged checks so as to establish a duty to disclose. In light of the foregoing, the Court dismisses Defendants' fraud claim without prejudice.

52. Finally, Zagaroli argues that Neill and Berry are barred by the doctrine of estoppel from asserting a breach of the Reclamation Purchase Agreement. Defendants' claim is based on Defendants' contention that Zagaroli failed to repay the notes and cash advances as required by the Reclamation Purchase Agreement. Zagaroli contends that Defendants are estopped from seeking damages for such breach under the Reclamation Purchase Agreement because Neill and Berry have allegedly rescinded the contract. The Reclamation Purchase Agreement provides

that "[i]n the event of non-payment of notes and advances or breach of the terms of this purchase agreement by Zagaroli and Pritchett, the right, use, benefit and ownership of the name 'Reclamation, LLC' would be transferred back to Neill and Berry." (*See* Countercl. ¶ 52.)

53. "A rescission implies the entire abrogation and undoing of the contract from the beginning." *Brannock v. Fletcher*, 271 N.C. 65, 74, 155 S.E.2d 277, 283 (1945). There is nothing in the above provision, or alleged anywhere else in Defendants' counterclaim, which would establish that rescission is the only available remedy under the Reclamation Purchase Agreement. The Court therefore denies the Motion to Dismiss in this regard.

54. In sum, the Court concludes that Defendants have failed to plead their claim for fraud with sufficient particularity, and such claim is hereby dismissed without prejudice. The Court denies the Motion to Dismiss in all other respects.

## VI. CONCLUSION

55. For the foregoing reasons, the Court hereby **DENIES** the Motion for Judgment on the Pleadings. The Court **DENIES IN PART** and **GRANTS IN PART** the Motion to Dismiss, dismissing Defendants' fraud claim without prejudice.

**SO ORDERED**, this the 29th day of December, 2016.

/s/ Michael L. Robinson
Michael L. Robinson
Special Superior Court Judge
  for Complex Business Cases