GEORGE SHINN SPORTS, INC., PLAINTIFF v. BAHAKEL SPORTS, INC., DEFENDANT

No. 8926SC901

(Filed 17 July 1990)

**Partnership § 3 (NCI3d) — agreement giving partner option to buy out other partner — partnership agreement not based on duress**

In an action to enforce a letter agreement between the parties giving plaintiff the option to buy defendant's partnership interest, the trial court properly granted plaintiff's motion for judgment on the pleadings where defendant admitted signing the agreement and admitted refusing to perform but contended that such refusal was justified because the parties' partnership agreement was signed under duress; defendant alleged that it signed the partnership agreement and a rights

agreement, even though they were contrary to the parties' earlier oral agreement, because plaintiff threatened to breach their oral agreement and find another investor; mere breach or threat of breach of contract, without more, is insufficient to establish a claim or defense of duress; defendant did not allege circumstances sufficient to state a defense based on duress arising from breach of fiduciary duty; that defendant signed the partnership agreement because he feared he would incur public condemnation and legal liability to the NBA if the chance of bringing an NBA team to Charlotte were lost was not an allegation of coercion sufficient to state a defense of duress in avoidance of the parties' agreements; nor did defendant adequately state claims for economic duress, undue influence, breach of fiduciary duty, fraud, constructive fraud, negligent misrepresentation, false concealment, estoppel, unclean hands, and misappropriation of the partnership's assets.

**Am Jur 2d, Partnership §§ 298, 391, 392.**

APPEAL by defendant from Judgment of *Judge Frank W. Snepp, Jr.*, entered 3 August 1989 in MECKLENBURG County Superior Court. Heard in the Court of Appeals 9 April 1990.

*Petree Stockton and Robinson, by John T. Allred and Jackson N. Steele, for plaintiff appellee.*

*Bailey, Patterson, Caddell & Bailey, P.A., by Allen A. Bailey; and Poyner & Spruill, by J. Phil Carlton and Susan K. Nichols, for defendant appellant.*

COZORT, Judge.

Defendant appeals from entry of judgment in favor of plaintiff on plaintiff's motion for judgment on the pleadings wherein defendant alleged duress and other matters in defense of plaintiff's claim for breach of an agreement giving plaintiff the option to purchase defendant's partnership interest. We affirm.

Plaintiff's complaint alleged the following: The parties, acting through their respective owners and agents, George Shinn for plaintiff, George Shinn Sports, Inc., and Cy Bahakel for defendant, Bahakel Sports, Inc., entered into a written Partnership Agreement on 16 June 1987 to form the Charlotte NBA Limited Partnership, which owns and operates the Charlotte Hornets basketball team. On that

GEORGE SHINN SPORTS, INC. v. BAHAKEL SPORTS, INC.

[99 N.C. App. 481 (1990)]

same day, the Partnership and WCCB-TV entered into a written agreement (hereinafter "Rights Agreement") giving WCCB-TV certain rights to telecast and broadcast Hornets games. WCCB-TV is owned and operated by Bahakel. In October of 1987, Bahakel "threatened" plaintiff that defendant would not make its $4,812,500 capital contribution on or before 15 November 1987 as required by the 16 June Partnership Agreement, because Bahakel wanted a more favorable broadcast rights package for WCCB-TV. On 5 November 1987, the parties entered into an agreement by letter (hereinafter "Letter Agreement") giving WCCB-TV expanded rights to televise Hornets games and giving plaintiff an option to purchase defendant's interest in the Partnership at a stated value. Plaintiff alleged that defendant had been represented by counsel throughout the negotiations leading to the 16 June and 5 November 1987 agreements.

The complaint further alleged that, on 3 April 1989, plaintiff notified defendant in writing of its decision to exercise its option to purchase defendant's partnership interest; that, on 1 May 1989, plaintiff tendered to defendant the agreed upon purchase price; and that defendant refused to convey its interest in violation of the Letter Agreement. Plaintiff sought specific performance of the Letter Agreement.

Attached to plaintiff's complaint were copies of the 16 June 1987 Partnership Agreement, the 16 June 1987 Rights Agreement, the 5 November 1987 Letter Agreement, the 3 April 1989 letter and Notice of Exercise of Option, and a copy of the alleged tendered check in the amount of $6,890,363.82. The Partnership Agreement is a thirty-page, single-spaced document setting forth purposes of the partnership, duties and capital contributions of the partners, provisions for withdrawals, options, meetings, accounting, reports, elections, and other provisions. The Agreement provides that it "contains the entire agreement among the Partners." Plaintiff and defendant were named as general partners, with plaintiff also named as Managing General Partner with sole right to execute contracts on behalf of the partnership. The Letter Agreement, in the form of a letter from defendant, states that a previous letter written by plaintiff's counsel "is hereby withdrawn." The Letter Agreement contains provisions setting forth telecast rights granted to WCCB-TV, gives defendant the right, under certain circumstances, to require plaintiff to purchase defendant's interest, and gives plaintiff an option to purchase defendant's interest in the Partnership at

a stated value. The Agreement also states, "Except as herein provided, the Rights Agreement and Partnership Agreement shall remain in full force and effect."

Defendant filed Answer and Counterclaims in which it admitted signing all the documents attached to plaintiff's complaint, that it was represented by named counsel during "part" of the negotiations leading to execution of the agreements, that it made the capital contributions required by the Partnership Agreement, and that it "refused, and continues to refuse, to convey its partnership interest to Plaintiff." Defendant raised fifteen defenses and nineteen counterclaims. In addition to averring that plaintiff failed to state a claim upon which relief can be granted, defendant presented fourteen legal theories: breach of fiduciary duty, coercion, breach of a prior oral partnership agreement, lack of consideration for the 5 November Letter Agreement, duress, economic duress and business compulsion, undue influence, constructive fraud, fraud, negligent false representations, false concealments, estoppel, unclean hands, and misappropriation and conversion of partnership assets. Defendant also alleged that, even if the agreement is enforceable, plaintiff is not entitled to specific performance because an adequate remedy exists at law.

In support of these legal theories, defendant alleged the following: In March of 1987, the parties entered into an oral partnership the terms of which differed in several respects from the Partnership Agreement executed the following June. In particular, the parties orally agreed that they would, as general partners, share profits and losses in proportion to their respective capital contributions, would share equally in management of the partnership and in major decision making, and that the partnership would grant WCCB-TV exclusive broadcast and telecast rights to all Charlotte National Basketball Association ("NBA") games. Subsequent to the oral agreement, the parties communicated with the NBA and announced publicly that they were general partners in a partnership to acquire a Charlotte NBA franchise and basketball team. In April, the NBA awarded an NBA franchise to the partnership.

Defendant further alleged that, in May and June of 1987, plaintiff "demanded" that defendant sign the written Partnership Agreement which, contrary to their oral agreement, appointed plaintiff the Managing General Partner with primary responsibility for managing the business affairs of the partnership, gave plaintiff a 51 percent

GEORGE SHINN SPORTS, INC. v. BAHAKEL SPORTS, INC.

[99 N.C. App. 481 (1990)]

controlling interest and defendant a 35 percent interest, provided that all contracts and other documents shall be executed only by plaintiff and that plaintiff shall make all decisions of the partnership, which decisions would be binding on defendant. Furthermore, defendant alleged that the Rights Agreement, contrary to the oral agreement, limited WCCB-TV's exclusive rights to the first NBA season and otherwise granted only contingent broadcast rights in the form of "rights of first refusal" and "opportunities to purchase." According to defendant, when Bahakel refused to sign these agreements, plaintiff "threatened" to sell defendant's interest to some other entity and to do the same to the telecast rights. As a result of these alleged threats, Bahakel "feared" that, if he refused to sign the agreements, he would "incur public condemnation and legal liability for breach of his commitment made in good faith to the NBA," that Charlotte would lose the franchise, that WCCB-TV would lose all broadcast and telecast rights, and that he "would be portrayed in the news media, and perceived publicly, as morally blameworthy and legally responsible for the failure to secure an NBA franchise for Charlotte, and the public image of Bahakel and WCCB-TV, Inc., therefore, would be severely damaged." Therefore, defendant, allegedly "induced and coerced by Plaintiff's misrepresentations, threats, and multiple breaches of fiduciary duties and provisions of said oral partnership agreement," signed the Partnership Agreement and the Rights Agreement.

Defendant admitted that, prior to signing the Letter Agreement, Bahakel had expressed "reservations" about making the $4,812,500 capital contribution due in November and that he had been motivated at least in part by his desire for a television package for WCCB-TV which "more fully accorded with Plaintiff's commitments in the oral partnership agreement" than did the Rights Agreement. Defendant alleged, however, that Bahakel signed the November Letter Agreement, made a total capital contribution of $6,002,500, and assisted plaintiff in incurring loans to the partnership in the amount of $22,000,000 "under the continuing inducement and coercion of Plaintiff's misrepresentations, threats, and multiple breaches of fiduciary duties and provisions of said oral partnership agreement." Defendant prayed that the court deny plaintiff the relief requested, construe and enforce the oral partnership agreement between the parties, and award compensatory and punitive damages on defendant's counterclaims.

GEORGE SHINN SPORTS, INC. v. BAHAKEL SPORTS, INC.

[99 N.C. App. 481 (1990)]

Plaintiff's Reply to Counterclaims alleged that the Letter Agreement constituted an accord and satisfaction of any disagreement between the parties with respect to their earlier agreements. Plaintiff attached as an exhibit a copy of a memo, allegedly drafted by defendant's attorney, which stated, "We agreed to resolve our differences on the NBA Partnership Agreement and Rights Agreement" as set forth in the subsequent Letter Agreement. We note here that, for the purposes of a motion for judgment on the pleadings, the memo, which is not the subject of any admission, must be disregarded.

The matter thereafter came on for hearing before the trial court on plaintiff's motion for judgment on the pleadings, which was allowed on 3 August 1989. Defendant appealed, and the trial court subsequently allowed defendant's motion for stay of execution on judgment. We affirm the trial court's ruling in favor of plaintiff.

A motion for judgment on the pleadings is a summary procedure, authorized by Rule 12(c) of the North Carolina Rules of Civil Procedure, which allows a trial court to enter judgment when all the material allegations of fact are admitted in the pleadings and only questions of law remain. N.C. Gen. Stat. § 1A-1, Rule 12(c); *Ragsdale v. Kennedy*, 286 N.C. 130, 137, 209 S.E.2d 494, 499 (1974). "The rule's function is to dispose of baseless claims or defenses when the formal pleadings reveal their lack of merit." *Id.* " 'A motion for judgment on the pleadings is allowable only where the pleading of the opposite party is so fatally deficient in substance as to present no material issue of fact . . . A complaint is fatally deficient in substance, and subject to a motion by the defendant for judgment on the pleadings if it fails to state a good cause of action for plaintiff and against defendant . . . An answer is fatally deficient in substance and subject to a motion by the plaintiff for judgment on the pleadings if it admits every material averment in the complaint and fails to set up any defense or new matter sufficient in law to avoid or defeat the plaintiff's claim.' " *Dobias v. White*, 239 N.C. 409, 412, 80 S.E.2d 23, 26 (1954) (quoting *Erickson v. Starling*, 235 N.C. 643, 657, 71 S.E.2d 384, 394 (1952) ). In ruling on a motion under Rule 12(c), the trial court must view the facts and all permissible inferences therefrom in the light most favorable to the nonmovant. *Ragsdale*, 286 N.C. at 137, 209 S.E.2d at 499.

GEORGE SHINN SPORTS, INC. v. BAHAKEL SPORTS, INC.

[99 N.C. App. 481 (1990)]

Plaintiff sought enforcement of the Letter Agreement between the parties giving plaintiff the option to buy defendant's partnership interest. Defendant admitted signing the Agreement and that it refused and continues to refuse to perform, but contended that such refusal was justified because the Partnership Agreement was signed under duress. As duress is a defense which must be stated with particularity, N.C. Gen. Stat. § 1A-1, Rule 9(b), defendant further set forth the circumstances alleged to give rise to the defense of duress. Those same circumstances, defendant concedes, form the basis of all its defenses and counterclaims raised in its responsive pleading. Thus, judgment on the pleadings could have been granted in plaintiff's favor only if the circumstances alleged to constitute duress and the other defenses and various claims for relief, viewed in the light most favorable to defendant and giving defendant all permissible inferences to be drawn in its favor, were insufficient as a matter of law to allow avoidance of its Letter Agreement with plaintiff. We conclude that, even under this strict standard, defendant's claims and defenses must fail.

Defendant alleged that Bahakel signed the Partnership Agreement and Rights Agreement even though those agreements were contrary to the oral agreement of March 1987, because plaintiff threatened to breach their oral agreement and find another investor. However, mere breach or threat of breach of contract, without more, is insufficient to establish a claim or defense of duress. See Rose v. Vulcan Materials Co., 282 N.C. 643, 665, 194 S.E.2d 521, 536 (1973). Nor does defendant allege circumstances sufficient to state a defense based on duress arising from breach of fiduciary duty. See Housing, Inc. v. Weaver, 37 N.C. App. 284, 246 S.E.2d 219 (1978), aff'd per curiam, 296 N.C. 581, 251 S.E.2d 457 (1979). That defendant signed the Partnership Agreement because he feared he would incur public condemnation and legal liability to the NBA if the chance of bringing an NBA team to Charlotte were lost is not an allegation of coercion sufficient to state a defense of duress in avoidance of the parties' agreements, nor has defendant adequately stated claims for economic duress, undue influence, breach of fiduciary duty, fraud, constructive fraud, or negligent misrepresentation. The similar claims of false concealment, estoppel, unclean hands, and misappropriation of the partnership's assets must also fail for the same reasons.

Furthermore, the pleadings clearly establish that the alleged duress arose from circumstances that existed only prior to the

execution of the Partnership Agreement, which was several months before the parties entered into the Letter Agreement that plaintiff seeks to enforce. The Letter Agreement on its face reaffirms the validity of the Partnership Agreement, and defendant has alleged no circumstances which would allow avoidance of that Agreement under a theory of "continuing duress." *See Housing, Inc.* Defendant has not, therefore, alleged facts which, if proved, would allow a trier of fact to conclude that Bahakel signed the Letter Agreement because plaintiff's wrongful acts " 'deprive[d] him of the exercise of free will.' " *Id.*, 37 N.C. App. at 294, 246 S.E.2d at 224 (quoting *Link v. Link*, 278 N.C. 181, 194, 179 S.E.2d 697, 704-05 (1971) ).

Defendant's contention that there is an issue of fact with respect to whether the Letter Agreement was supported by consideration is also meritless. The face of the document reveals mutual promises and benefits accruing to the parties.

In sum, defendant admitted the material allegations of plaintiff's complaint and failed to allege any defense or new matter sufficient in law to avoid or defeat plaintiff's claim. We hold that the trial court properly granted judgment for plaintiff.

Affirmed.

Chief Judge HEDRICK and Judge PARKER concur.