Se. Anesthesiology Consultants, PLLC v. Charlotte-Mecklenburg Hosp. Auth., 2019 NCBC 74.

STATE OF NORTH CAROLINA

MECKLENBURG COUNTY

IN THE GENERAL COURT OF JUSTICE
SUPERIOR COURT DIVISION
18 CVS 5899

SOUTHEAST ANESTHESIOLOGY
CONSULTANTS, PLLC; AMERICAN
ANESTHESIOLOGY OF THE
SOUTHEAST, PLLC; MEDNAX
SERVICES, INC.; and RUSSELL A.
SAUDER, M.D., M.B.A.,

Plaintiffs,

v.

THE CHARLOTTE-
MECKLENBURG HOSPITAL
AUTHORITY, d/b/a CAROLINAS
HEALTHCARE SYSTEM and d/b/a
ATRIUM HEALTH; THOMAS M.
WHERRY, M.D.; TOTAL
ANESTHESIA SOLUTIONS, LLC;
and SCOPE ANESTHESIA OF
NORTH CAROLINA, PLLC,

Defendants.

**ORDER AND OPINION ON
DEFENDANTS' MOTIONS FOR
JUDGMENT ON THE PLEADINGS**

1.    **THIS MATTER** is before the Court on: (i) Defendant The Charlotte-Mecklenburg Hospital Authority, d/b/a Carolinas Healthcare System and d/b/a Atrium Health's ("Atrium") Motion for Judgment on the Pleadings ("Atrium's Motion"), (ECF No. 100); and (ii) Defendants Thomas M. Wherry, M.D. ("Dr. Wherry"), Total Anesthesia Solutions, LLC ("Total Anesthesia"), and Scope Anesthesia of North Carolina, PLLC's ("Scope Anesthesia") (collectively, the "Wherry Defendants") Motion for Judgment on the Pleadings (the "Wherry Defendants' Motion"), (ECF No. 113).  Atrium and the Wherry Defendants are collectively referred to herein as "Defendants."  Atrium's Motion and the Wherry Defendants' Motion are collectively referred to herein as the "Motions."

2. For the reasons set forth herein, the Court **GRANTS** in part and **DENIES** in part the Motions.

*Nelson Mullins Riley & Scarborough LLP by Mark A. Stafford, Candace S. Friel, and Noah H. Huffstetler, III, for Plaintiffs.*

*Robinson, Bradshaw & Hinson, P.A. by David C. Wright, III, Martin L. Brackett, Jr., Charles E. Johnson, and Jonathan C. Krisko, for Defendant The Charlotte-Mecklenburg Hospital Authority.*

*McGuireWoods LLP by Mark E. Anderson, Jacob D. Charles, Bradley R. Kutrow, John G. McDonald, Paul M. Navarro, and Alec C. Covington, for Defendants Thomas M. Wherry, M.D., Total Anesthesia Solutions, LLC, and Scope Anesthesia of North Carolina, PLLC.*

Robinson, Judge.

## I. FACTUAL BACKGROUND

3. The Court does not make findings of fact on a motion for judgment on the pleadings pursuant to Rule 12(c), but only recites those factual allegations that are relevant and necessary to the Court's determination of the Motions.[1]

### A. The Parties

4. Southeast Anesthesiology Consultants, PLLC ("SAC") is a professional limited liability company organized and existing under the laws of the State of North Carolina. (Compl. ¶ 11, ECF No. 3.) SAC is a medical practice which provides "professional anesthesiology services" in North Carolina. (Compl. ¶ 21.)

---

[1] Both Plaintiffs and Defendants reference materials that are not appropriate for the Court's review on a Rule 12(c) motion. However, when it is clear from the record and the order itself that the Court has not considered additional materials, a Rule 12(c) motion is not converted to a Rule 56 motion. *Estate v. Belk v. Boise Cascade Wood Prods., L.L.C.*, 824 S.E.2d 180, 183 (N.C. Ct. App. Feb. 5, 2019). For the purposes of ruling on the Motions, the Court only considers the pertinent pleadings.

5. American Anesthesiology of the Southeast, PLLC ("AASE") is a professional limited liability company organized and existing under the laws of the State of North Carolina. (Compl. ¶ 12.)

6. MEDNAX Services, Inc. ("MEDNAX"), a "physician practice management company", is a corporation organized and existing under the laws of the State of Florida. (Compl. ¶ 13.) SAC, AASE, and MEDNAX are collectively referred to herein as the "Provider Plaintiffs."

7. Russell A. Sauder, M.D., ("Dr. Sauder") is a resident of Mecklenburg County, North Carolina. (Compl. ¶ 14.) At all times relevant herein, Dr. Sauder acted as an employee of AASE and provided anesthesiology services to Atrium. (Compl. ¶ 14.) Dr. Sauder and the Provider Plaintiffs are collectively referred to herein as "Plaintiffs."

8. Atrium is a statutorily established non-profit hospital authority organized and existing under the laws of the State of North Carolina with its principle place of business in Mecklenburg County, North Carolina. (Compl. ¶ 15.)

9. Total Anesthesia is a limited liability company organized and existing under the laws of the State of Maryland. (Compl. ¶ 19.)

10. Scope Anesthesia is a professional limited liability company organized and existing under the laws of the State of North Carolina. (Compl. ¶ 20.)

11. Dr. Wherry is a member and co-founder of Total Anesthesia and is a member and organizer of Scope Anesthesia. (Compl. ¶¶ 19–20.)

**B.** **The Agreements**

12.   AASE, an affiliate of SAC, employs more than 90 anesthesiologists who have entered into employment agreements with AASE (the "Employment Agreements"). (Compl. ¶¶ 2, 25.) SAC is an intended third-party beneficiary of the Employment Agreements. (Compl. ¶ 25.) SAC and AASE maintained an agreement pursuant to which the anesthesiologists employed by AASE (the "SAC Physicians") would provide anesthesiology services for SAC at hospitals and other medical facilities. (Compl. ¶ 2.)

13.   The Employment Agreements included a non-compete provision (the "Non-Compete Provision") prohibiting the SAC Physicians from practicing anesthesiology for a period of two years following termination of their employment within

> (A) Mecklenburg County, North Carolina, (B) a twenty mile radius of any health care facility at which such SAC Physician rendered anesthesia services during the year prior to termination, (C) a twenty mile radius of any health care facility at which such SAC Physician rendered medical services during the year prior to the Physician's termination, or (D) a twenty mile radius of any facility owned, operated or controlled by Atrium or its subsidiaries of affiliates.

(Compl. ¶ 26.) Defendants, at all times relevant herein, "have been aware of the existence" of the Non-Compete Provision. (Compl. ¶ 27.)

14.   SAC and Atrium entered into an agreement, pursuant to which the SAC Physicians acted as the exclusive provider of anesthesiology services at certain facilities owned by Atrium in North Carolina (the "Atrium Agreement"). (Compl. ¶ 21.)

15. The Atrium Agreement contains confidentiality provisions (the "Confidentiality Provisions") prohibiting the disclosure of the Provider Plaintiffs' confidential information to "subcontractors, professional advisors and independent contractors" and requiring the mentioned affiliates of Atrium to agree to be bound by the Confidentiality Provisions if disclosure to them was required for the performance of their obligations. (Compl. ¶ 23.)

16. Beginning in 2010, SAC contracted with MEDNAX to provide SAC with administrative and management services including billing and collection services, human resources, financial services, recruiting and credentialing, and contract negotiations. (Compl. ¶ 22.)

C. **Consultation with the Wherry Defendants**

17. In the spring of 2017, Atrium informed the Provider Plaintiffs that Dr. Wherry and Total Anesthesia would be acting as Atrium's consultant to assist in "evaluating how anesthesia care is delivered at the Atrium facilities." (Compl. ¶ 36) (quotation marks omitted). In reliance on representations made by Atrium, SAC shared "large amounts of confidential, proprietary, and trade secret information" with Atrium, Dr. Wherry, and Total Anesthesia throughout the summer and fall of 2017. (Compl. ¶ 37.)

18. Plaintiffs believed that Dr. Wherry, as a professional advisor and independent contractor of Atrium, would adhere to the Confidentiality Provisions consistent with the Atrium Agreement. (Compl. ¶ 38.)

19.     The Atrium Agreement was set to expire on December 31, 2017. (Compl. ¶ 42.) Beginning in the summer of 2017, Atrium expressed interest in negotiating for a renewal or extension of the Atrium Agreement. (Compl. ¶ 42.) SAC agreed to a six-month extension, extending the Atrium Agreement from January 1, 2018 until June 30, 2018, with a "no shop" provision during the first three months. (Compl. ¶ 44.) Plaintiffs allege that Atrium's expressed interest in negotiating an extension beyond July 2018 was not in good faith and only made with the intention to mislead Plaintiffs in furtherance of an alleged scheme with the Wherry Defendants to oust Plaintiffs from the market. (Compl. ¶¶ 42, 50–51.)

20.     Plaintiffs contend that Atrium's representations made during negotiations and representations regarding Dr. Wherry's involvement with Atrium were false and were made with the intent to induce Plaintiffs to continue to share confidential information with the Defendants in furtherance of the alleged scheme between Atrium and the Wherry Defendants. (Compl. ¶¶ 50–51.) Plaintiffs allege that Defendants hoped to misappropriate SAC's confidential information, use SAC's confidential information to form Scope Anesthesia as a competing entity to provide professional anesthesia services, and ultimately replace SAC with Scope Anesthesia. (Compl. ¶ 50–51, 54.)

21.     On or about December 28, 2017, Atrium entered into an agreement with Scope Anesthesia to provide the services formerly provided by SAC pursuant to the Atrium Agreement. (Compl. ¶ 54.) Scope Anesthesia was later incorporated in North Carolina on January 30, 2018. (Compl. ¶56.)

## II. PROCEDURAL BACKGROUND

22. The Court sets forth here only those portions of the procedural history relevant to its determination of the Motion.

23. On March 26, 2018, Plaintiffs filed the Complaint. (ECF No. 3.) On April 4, 2018, this matter was designated as a mandatory complex business dispute and assigned to the undersigned. (ECF Nos. 1, 2.)

24. On June 22, 2018, the Court denied Plaintiffs' request for a temporary restraining order and a preliminary injunction. (ECF No. 90.)

25. On September 14, 2018, Atrium filed its Motion for Partial Judgment on the Pleadings and a brief in support thereof. (Atrium Health's Br. Supp. of its Mot. Partial J. the Pleadings ECF No. 101 ["Atrium Br."].) The Wherry Defendants filed their Motion for Judgment on the Pleadings and a brief in support thereof on October 9, 2018. (Wherry Defs.' Br. Supp. of Mot. J. the Pleadings ECF No.114 ["Wherry Defs.' Br."].)

26. The Motions have been fully briefed, and the Court held a hearing on the Motions on December 19, 2018. (*See* ECF No. 129.)

27. On October 11, 2019, Plaintiffs voluntarily dismissed without prejudice their claims for monopolization, attempted monopolization, and restraint of trade brought pursuant to Chapter 75 of the North Carolina General Statutes. (ECF No. 174.)

28. The Motions are ripe for resolution.

### III. LEGAL STANDARD

29. "A motion for judgment on the pleadings should not be granted unless the movant clearly establishes that no material issue of fact remains to be resolved and that he is entitled to judgment as a matter of law." *Carpenter v. Carpenter*, 189 N.C. App. 755, 761, 659 S.E.2d 762, 767 (2008); *see also Ragsdale v. Kennedy*, 286 N.C. 13, 137, 209 S.E.2d 494, 499 (1974). The function of Rule 12(c) "is to dispose of baseless claims or defenses when the formal pleadings reveal their lack of merit." *Ragsdale*, 286 N.C. at 137, 209 S.E.2d at 499. "A motion for judgment on the pleadings is allowable only where the pleading of the opposite party is so fatally deficient in substance as to present no material issue of fact . . . ." *George Shinn Sports, Inc. v. Bahakel Sports, Inc.*, 99 N.C. App. 481, 486, 393 S.E.2d 580, 583 (1990).

30. "[T]he court cannot select some of the alleged facts as a basis for granting the motion on the pleadings if other allegations, together with the selected facts, establish material issues of fact." *J. F. Wilkerson Contracting Co. v. Rowland*, 29 N.C. App. 722, 725, 225 S.E.2d 840, 842 (1976). The court must read the pleadings in the light most favorable to the nonmoving party, and

> [a]ll well pleaded factual allegations in the nonmoving party's pleadings are taken as true and all contravening assertions in the movant's pleadings are taken as false. All allegations in the nonmovant's pleadings, except conclusions of law, legally impossible facts, and matters not admissible in the evidence at trial, are deemed admitted by the movant for purposes of the motion.

*Ragsdale*, 286 N.C. at 137, 209 S.E.2d at 499 (citations omitted).

## IV. ANALYSIS

31. The Wherry Defendants' Motion seeks dismissal of Plaintiffs' claims for: (i) misappropriation of trade secrets; (ii) tortious interference with contract; and (iii) common law unfair competition. Atrium's Motion seeks dismissal of Plaintiffs' claim for: (i) misappropriation of trade secrets; and (ii) common law unfair competition.

32. In part, Defendants rely upon the analysis in the Court's June 22, 2018 Order on Plaintiffs' Motion for Temporary Restraining Order and/or Preliminary Injunction in their arguments. At the outset, the Court notes that a motion for injunctive relief pursuant to Rule 65 is governed by a different standard than a motion pursuant to Rule 12(c), and the Court's ruling denying preliminary injunctive relief is not outcome dispositive on the Motions. *See A.E.P. Indus., Inc. v. McClure*, 308 N.C. 393, 401, 302 S.E.2d 754, 759–60 (1983) ("[A preliminary injunction] will be issued only (1) if a plaintiff is able to show *likelihood* of success on the merits. . . and (2) if a plaintiff is likely to sustain irreparable loss unless the injunction is issued[.]") (citation omitted); *see, e.g., DSM Dyneema, LLC v. Thagard*, 2015 NCBC LEXIS 50, at \*13 (N.C. Super. Ct. May 12, 2015).

### A. Misappropriation of Trade Secrets

33. "The threshold question in any misappropriation of trade secrets case is whether the information obtained constitutes a trade secret[.]" *Combs & Assocs. v.*

*Kennedy*, 147 N.C. App. 362, 369, 555 S.E.2d 634, 639 (2001). The North Carolina Trade Secrets Protection Act ("TSPA") defines a trade secret as:

> Business or technical information, including but not limited to a formula, pattern, program, device, compilation of information, method, technique, or process that:
>
> a. Derives independent actual or potential commercial value from not being generally known or readily ascertainable through independent development or reverse engineering by persons who can obtain economic value from its disclosure or use; and
>
> b. Is the subject of efforts that are reasonable under the circumstances to maintain its secrecy.

N.C.G.S. § 66-152(3).

34. "To plead misappropriation of trade secrets, a plaintiff must identify a trade secret with sufficient particularity so as to enable a defendant to delineate that which he is accused of misappropriating and a court to determine whether misappropriation has or is threatened to occur." *Krawiec v. Manly*, 370 N.C. 602, 609, 811 S.E.2d 542, 547–48 (2018) (quoting *Washburn v. Yadkin Valley Bank & Tr. Co.*, 190 N.C. App. 315, 326, 660 S.E.2d 577, 585 (2008)).

35. Plaintiffs describe their trade secrets as "SAC's coverage and staffing model, scheduling templates, subspecialty scheduling planning data, . . . methods for implementation of Enhanced Recovery After Surgery ("ERAS") protocols, details of physician compensation[,] confidential terms of employment agreements and structures" (collectively the "Confidential Information"). (Compl. ¶ 37.) Plaintiffs further describe the ERAS as "multi-modal perioperative care pathways designed to achieve early recovery after surgical procedures by maintaining pre-operative organ

function and reducing the profound stress response that occurs following surgery." (Compl. ¶ 59.) The Confidential Information comprises the Provider Plaintiffs' methods by which they achieve "efficient and effective scheduling, coverage, and patient care for more than 30,000 patients annually in the region." (Compl. ¶ 37.)

36. The Court concludes, and Defendants do not contend otherwise, that Plaintiffs have identified the allegedly misappropriated trade secrets with sufficient particularity for the purposes of Rule 12(c). *See Med. Staffing Network, Inc. v. Ridgeway*, 194 N.C. App. 649, 658–59, 670 S.E.2d 321, 328–29 (2009) (showing that information related to the pay rates and shift and facility preferences of the staffing agency's nurses can constitute a trade secret); *Sunbelt Rentals, Inc. v. Head & Engquist Equip., L.L.C.*, 174 N.C. App. 49, 53–56, 620 S.E.2d 222, 226–28 (2005) (concluding that salary and personnel information constituted a trade secret); *Encompass Servs., PLLC v. Maser Consulting, P.A.*, 2019 NCBC LEXIS 67, at *14–15 (N.C Super. Ct. Nov. 5, 2019) (concluding that "rate tables," "design files," and "a plat template, multiple deed plat tracking spreadsheets, survey plats, and project progress information" coupled with other more general allegations was sufficient to describe the alleged trade secret); *Window Gang Ventures, Corp. v. Salinas*, 2019 NCBC LEXIS 24, at *42–43 (N.C. Super. Ct. Apr. 2, 2019) (determining that "step-by-step service manual; its employee manual; its operations manual and guidelines and recommendations for operating a successful franchise" was sufficient to identify a trade secret pursuant to Rule 12(b)(6)); *Comput. Design & Integration, LLC v. Brown*, 2018 NCBC LEXIS 216, at *44 (N.C. Super. Ct. Dec. 10, 2018) (concluding

that the plaintiff's compilation of information which included its employees' "hours, earnings, and reimbursements & other payments" could be a protectable trade secret).

37. Defendants argue that the pleadings reveal that Plaintiffs failed to take reasonable efforts to maintain the secrecy of any purported trade secrets because Plaintiffs disclosed the Confidential Information to an entity subject to the Public Records Act without designating the information as confidential. (Atrium Br. 15–16; Wherry Defs.' Br. 4.)

38. It is well-established that Atrium is subject to the Public Records Act. *See Jackson v. Charlotte Mecklenburg Hosp. Auth.*, 238 N.C. App. 351, 352, 768 S.E.2d 23, 24 (2014); *see also* N.C.G.S. § 131E-16(14) (defining "hospital authority" as "a public body and a body corporate and politic"). The Public Records Act generally provides the public with "liberal access to public records." *Knight Publ'g Co. v. Charlotte-Mecklenburg Hosp. Auth.*, 172 N.C. App. 486, 489, 616 S.E.2d 602, 605 (2005).

39. "[Absent] clear statutory exemption or exception the documents falling within the definition of 'public records' in the Public Records Law must be made available for public inspection." *News & Observer Publ'g Co. v. Poole*, 330 N.C. 465, 486, 412 S.E.2d 7, 19 (1992). "Exceptions and exemptions to the Public Records Act

must be construed narrowly." *Carter-Hubbard Publ'g Co. v. WRMC Hosp. Operating Corp.*, 178 N.C. App. 621, 624, 633 S.E.2d 682, 684 (2006).

40. Disclosing a trade secret to an entity subject to the Public Records Act does not necessarily defeat a misappropriation of trade secrets claim. There are two exemptions from public records disclosure that might be applicable here.

41. First, trade secrets provided to an entity otherwise subject to the Public Records Act are nonetheless exempt from public disclosure when the information:

> a. Constitutes a trade secret as defined in G.S. 66-152(3).
>
> b. Is the property of a private person as defined in G.S. 66-152(2).
>
> c. Is disclosed or furnished to the public agency in connection with the owner's performance of a public contract or in connection with a bid, application, proposal, industry development project, or in compliance with laws, regulations, rules, or ordinances of the United States, the State, or political subdivisions of the State.
>
> d. Is designated or indicated as confidential or as a trade secret at the time of its initial disclosure to the public agency.

N.C.G.S. § 132-1.2 (quotation marks omitted).

42. Second, "competitive health care information" as defined by N.C.G.S. § 131E-97.3(a), is confidential information not subject to public disclosure pursuant to the Public Records Act. *Id.* § 131E-97.3(a). Under N.C.G.S. 131E-97.3(a), "[i]nformation relating to competitive health care activities by or on behalf of hospitals and public hospital authorities" is considered competitive health care information. N.C.G.S. § 131E-97.3(a).

43. Defendants contend that Plaintiffs failed to designate the Confidential Information as "confidential" or as a trade secret; therefore, any information provided

by Plaintiffs to Defendants does not qualify for the exception in N.C.G.S. § 132-1.2. (Atrium Br. 17–18; Wherry Defs.' Br. 4.) Plaintiffs contend that, even if they failed to designate the Confidential Information as confidential at the time it was provided to Defendants, the Confidential Information is not subject to disclosure under the public records act because it qualifies as competitive health care information as defined by N.C.G.S. § 131E-97.3.

44. The Confidential Information is not before the Court as a part of the record properly considered on the Motions. Taking into consideration all of the factual allegations made by Plaintiffs, failure to specifically allege an exception to the Public Records Act is not fatal to Plaintiffs' claim. Whether the Confidential Information was marked as confidential or designated as a trade secret or whether the Confidential Information is competitive healthcare information should be determined on a more fully developed record. Therefore, the Court must determine whether Plaintiffs otherwise sufficiently allege in the Complaint efforts they took to maintain the secrecy of the Confidential Information.

45. Plaintiffs allege that Atrium signed the Confidentiality Provisions, which required Atrium and all of its professional advisors and independent contractors to agree to be bound to the Confidentiality Provisions. (Compl. ¶ 23.) Plaintiffs further allege that SAC Physicians signed confidentiality agreements as part of the Employment Agreements. (Compl. ¶ 94.) While Plaintiffs' allegations regarding their efforts to maintain secrecy are minimal, at this stage of the proceeding, the Court concludes that the allegations are sufficient to survive the Motions. *See*

*Window Gang Ventures, Corp.*, 2019 NCBC LEXIS 24, at *45 (concluding that, in consideration of the parties relationship, the allegations regarding a signed confidentiality agreement were sufficient pleading of the plaintiff's efforts to maintain secrecy of an alleged trade secret for the purposes of Rule 12); *Bldg. Ctr., Inc., v. Carter Lumber, Inc.*, 2016 NCBC LEXIS 79, at *14 (N.C. Super. Ct. Oct. 21, 2016) ("Generally, only where efforts to maintain [the] secrecy of the allegedly misappropriated trade secrets were completely absent have North Carolina courts dismissed claims at the 12(b)(6) stage."); *see also Static Control Components, Inc v. Darkprint Imaging, Inc.*, 200 F. Supp. 2d 541, 546 (M.D.N.C. 2002) ("[C]onfidentiality agreements are one method used to protect confidential information[.]"); *Safety Test & Equip. Co. v. Am. Safety Util. Corp.*, 2015 NCBC LEXIS 40, at *27 (N.C. Super. Ct. Apr. 23, 2015) ("The inquiry [of whether a plaintiff took reasonable efforts to maintain the secrecy of a trade secret] must be as to specific facts which vary from case to case").

46. The Complaint is not so deficient that it warrants dismissal on a Rule 12(c) motion. *See George Shinn Sports, Inc.*, 99 N.C. App. at 486, 393 S.E.2d at 583. At this stage in the proceeding, without the benefit of a fully developed record, Defendants' Motions as to SAC, AASE, and MEDNAX's trade secret misappropriation claims should be DENIED.

47. Seemingly, only SAC, AASE, and MEDNAX intend to assert a misappropriation of trade secrets claim against Defendants. Any alleged trade secret is owned by the "Provider and Manager Plaintiffs" as defined in the Complaint as

SAC, AASE, and MEDNAX. (*See* Compl. ¶¶ 92–101.) Plaintiffs fail to allege any trade secret owned by Dr. Sauder. *See Cty. of Wayne Const. Managers of Goldsboro v. Amory*, 2019 NCBC LEXIS 32, at *21 (N.C. Super. Ct. May 17, 2019) ("The TSPA grants only the owner of a trade secret the remedy of a civil action for misappropriation of a trade secret."). Therefore, Defendants' Motions should be GRANTED as to any attempted claim for misappropriation of trade secrets brought by Dr. Sauder.

**B.    Tortious Interference with Contract**

48.    Plaintiffs only assert a tortious interference with contract claim against the Wherry Defendants. (Compl. 33.) Plaintiffs contend that the Wherry Defendants tortiously interfered with both the Atrium Agreement and the Employment Agreements. (Compl. ¶ 103.)

49.    To sustain a claim for tortious interference with contract, the pleading must allege that:

> (1) a valid contract [exists] between the [claimant] and a third person which confers upon the [claimant] a contractual right against a third person; (2) the [opposing party] knows of the contract; (3) the [opposing party] intentionally induces the third person not to perform the contract; (4) and in doing so acts without justification; (5) resulting in actual damage to [claimant].

*United Labs., Inc. v. Kuykendall*, 322 N.C. 643, 661, 370 S.E.2d 375, 387 (1988). "The pleading standards for a tortious interference with contract claim are strict." *Kerry Bodenhamer Farms, LLC v. Nature's Pearl Corp.*, 2017 NCBC LEXIS 27, at *16 (N.C. Super. Ct. Mar. 27, 2017).

50. The Wherry Defendants argue that Plaintiffs' pleading is defective in two ways. First, they contend Plaintiffs fail to allege inducement of Atrium by the Wherry Defendants to breach the Atrium Agreement. Second, with respect to their alleged interference with the Employment Agreements, the Wherry Defendants contend that Plaintiffs failed to plead actual damages. The Court agrees. Plaintiffs' failure to plead inducement and actual damages is fatal to their claim for tortious interference with contract.

### 1. Inducement

51. To sufficiently plead inducement, there must be allegations of "purposeful conduct", "active persuasion, request, or petition." *KRG New Hill Place, LLC v. Springs Inv'rs, LLC*, 2015 NCBC LEXIS 20, at *14–16 (N.C. Super. Ct. Feb. 27, 2015) (quoting *Inland Am. Winston Hotels, Inc. v. Crockett*, 212 N.C. App. 349, 354, 712 S.E.2d 366, 369–70 (2011)). A plaintiff must allege that a defendant did more than cause a third party to breach an agreement with the plaintiff. *KRG New Hill Place, LLC*, 2015 NCBC LEXIS 20, at *16.

52. It is Plaintiffs' position that representations made regarding Atrium's desire to negotiate in good faith towards a new agreement with SAC were false and Atrium created "an illusion" that it was not breaching the Atrium Agreement. (Compl. ¶¶ 50, 52.) Plaintiffs allege that Atrium worked with Dr. Wherry in order to cover up any purported breach of the Atrium Agreement and used the Wherry Defendants to "cut Plaintiffs out of the marketplace." (Compl. ¶¶ 52, 78.) Plaintiffs

also allege that the Wherry Defendants hoped to "cause Atrium to terminate the Atrium Agreement[.]"  (Compl. ¶ 105.)

53.     The pleadings lack any allegations that show any "purposeful conduct" or "active, persuasion [or] request" by the Wherry Defendants in an effort to induce Atrium to breach the Atrium Agreement.  *See id.* at *14–16.  At best, Plaintiffs allege that Defendants could have caused them to breach or terminate the Atrium Agreement, and such allegations, without more, cannot support a claim for tortious interference with contract.  *See Se. Anesthesiology Consultants, PLLC v. Rose*, 2019 NCBC LEXIS 52, at * 29 (N.C. Super. Ct. Aug. 20, 2019).

54.     Therefore, the Wherry Defendants' Motion should be GRANTED and Plaintiffs' claim for tortious interference with the Atrium Agreement should be DISMISSED without prejudice.[2]

### 2.     Actual Damage

55.     "[M]onetary damages or 'actual pecuniary harm' to plaintiffs . . . is a required element of tortious interference with contract."  *Burgess v. Busby*, 142 N.C. App. 393, 404, 544 S.E.2d 4, 10 (2001); *Am. Air Filter Co. v. Price*, 2017 NCBC LEXIS 55, at *17 (N.C. Super. Ct. June 26, 2017).  The North Carolina appellate courts have also "suggested that such damages must be connected to a contract right."  *See SiteLink Software, LLC v. Red Nova Labs, Inc.*, 2018 NCBC LEXIS 90, at *49 (N.C. Super. Ct. Aug. 20, 2018).

---

[2] The decision to dismiss an action with or without prejudice is in the discretion of the trial court.  *First Fed. Bank v. Aldridge*, 230 N.C. App. 187, 191, 749 S.E.2d 289, 292 (2013).  The Court concludes, in the exercise of its discretion, that dismissal of the tortious interference with contract claim pertaining to the Atrium Agreement should be without prejudice.

56.     Plaintiffs allege that Defendants "plotted to potentially steal their anesthesiologists to establish Dr. Wherry and his companies as SAC's replacement." (Compl. ¶ 35.) Missing from the Complaint is any allegation that Defendants actually interfered with, or the SAC Physicians breached, the Employment Agreements. Plaintiffs only allege that Defendants have created a situation where the SAC Physicians *might* violate the Employment Agreements or the Non-Compete Provisions therein or become employed in another region. (Compl. ¶ 63.) Plaintiffs fail to allege any actual harm that has occurred based on any purported interference with the Employment Agreements.

57.     For the foregoing reasons, Plaintiffs' claim for tortious interference with contract is deficient and the Wherry Defendants' Motion as to the claim for tortious interference with contract should be GRANTED and Plaintiffs' claim for tortious interference with the Employment Agreements should be DISMISSED with prejudice.

C.     **Common Law Unfair Competition**

58.     Plaintiffs previously brought claims pursuant to N.C.G.S. §§ 75-1, 75-2, and 75-2.1 for monopolization, attempted monopolization, and restraint of trade, which they voluntarily dismissed without prejudice on October 11, 2019. (Compl. 37–42.) Plaintiffs never sought relief pursuant to the unfair and deceptive trade practices act ("UDTPA") of N.C.G.S. § 75-1.1 but assert a claim for common law unfair competition.[3]

---

[3] Defendants raise the issue of whether a claim pursuant to UDTPA is intended to be broader than a common law claim for unfair competition. (Atrium Br. 14–15; Wherry Defs.' Br. 4.)

59.     "The gravamen of unfair competition is the protection of a business from misappropriation of its commercial advantage earned through organization, skill, labor, and money." *Henderson v. U.S. Fid. & Guar. Co.*, 346 N.C. 741, 749, 488 S.E.2d 234, 239–40 (1997).  "The standard which a plaintiff must meet to recover on an unfair competition claim under the common law is not appreciably different from a claim for unfair or deceptive trade practices [pursuant to Chapter 75]." *Global Textile Alliance, Inc. v. TDI Worldwide, LLC*, 2018 NCBC LEXIS 104, at *23 (N.C. Super. Ct. Oct. 9, 2018) (alteration in original) (citing *BellSouth Corp. v. White Directory Publishers, Inc.*, 42 F. Supp. 2d 598, 615 (M.D.N.C. 1999).  Pleading a violation of the UDTPA requires allegations showing that "(1) defendant committed an unfair or deceptive act or practice, (2) the action in question was in or affecting commerce, and (3) the act proximately caused injury to the plaintiff." *Dalton v. Camp*, 353 N.C. 647, 656, 548 S.E.2d 704, 711 (2001).

60.     A common law unfair competition claim may encompass "interference with a competitor's contractual relations, disparagement of a competitor's product or business methods, and misappropriation of a competitor's intangible property rights

---

Defendants fail to bring to the Court's attention any law supportive of the general premise that if a party cannot sustain a UDTPA claim, because, for example, the Defendants' conduct is exempt from liability under the learned profession exception, then the party cannot sustain a common law unfair competition claim.  The North Carolina Court of Appeals' decisions in *Sperry Corp. v. Patterson*, 73 N.C. App. 123, 125, 325 S.E.2d 642, 644–45 (1985) and *Badin Shores Resort Owners Ass'n* v. *Handy Sanitary Dist.*, 257 N.C. App. 542, 811 S.E.2d 198 (2018), and this Court's analysis thereof in *DiCesare v. Charlotte-Mecklenburg Hosp. Auth.*, 2019 NCBC LEXIS 14 (N.C. Super. Ct. Feb. 27, 2019), preclude Plaintiffs from pursuing claims against Atrium pursuant to Chapter 75 due to the express language of the statute. However, Plaintiffs no longer seek recovery pursuant to Chapter 75, and the Court does not find it necessary to apply its analysis of these cases to a claim for common law unfair competition.

such as advertising devices or business systems." *Stearns v. Genrad, Inc.*, 564 F. Supp. 1309, 1320 (M.D.N.C. 1983).

61. The Court has already determined that SAC, AASE, and MEDNAX's claim for trade secret misappropriation survives the Motions. Plaintiffs also assert a claim of fraud, which is not subject to dismissal pursuant to the Motions. (Compl. 35.) The underlying conduct for both claims of trade secret misappropriation and fraud may support Plaintiffs' claim for common law unfair competition for the purposes of Rule 12(c). *See Global Textile Alliance, Inc.*, 2018 NCBC LEXIS 104, at \*20–24 (concluding that fraudulent conduct may serve as the basis of a common law unfair competition claim); *NFH, Inc. v. Troutman*, 2019 NCBC LEXIS 66, at \* 64 (N.C. Super. Ct. Oct. 29, 2019) ("Under well-settled North Carolina law, a violation of [the TSPA] may support liability under N.C.G.S. § 75-1.1."). The Court concludes that Plaintiffs have adequately alleged conduct that would support a claim for common law unfair competition, at least at this stage of the proceeding. Therefore, Defendants' Motion should be DENIED as to Plaintiffs' claim for common law unfair competition.

## V. CONCLUSION

62. For the foregoing reasons, the Court hereby **GRANTS** in part and **DENIES** in part the Motions.

        A. The Motions are **DENIED** as **MOOT** as to Plaintiffs' former claims of monopolization/attempted monopolization and restraint of trade;

B. Defendants' Motions seeking dismissal of SAC, AASE, and MEDNAX's misappropriation of trade secrets claim is **DENIED**;

C. Defendants' Motions seeking dismissal of Dr. Sauder's misappropriation of trade secrets claim is **GRANTED** and his claim is **DISMISSED WITH PREJUDICE**;

D. The Wherry Defendants' Motion seeking dismissal of Plaintiffs' tortious interference with contract claim as it relates to the Atrium Agreement is **GRANTED** and the claim is **DISMISSED WITHOUT PREJUDICE**;

E. The Wherry Defendants' Motion seeking dismissal of Plaintiffs' tortious interference with contract claim as it relates to the Employment Agreements is **GRANTED** and the claim is **DISMISSED WITH PREJUDICE**.

F. Defendants' Motions seeking dismissal of Plaintiffs' common law unfair competition claim is **DENIED**.

**SO ORDERED**, this the 13th day of December, 2019.


/s/ Michael L. Robinson
_____
Michael L. Robinson
Special Superior Court Judge
  for Complex Business Cases